APPEAL,PBrecused,TRLSET

# U.S. District Court
# District of New Hampshire (Concord)
# CIVIL DOCKET FOR CASE #: 1:12−cv−00040−LM

Isaacs v. Dartmouth Hitchcock Medical Center et al
Assigned to: District Judge Landya B. McCafferty
Related Case: 1:12−cv−00413−SM
Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 02/03/2012
Jury Demand: Both
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**J. D. Isaacs**                            represented by   **J. D. Isaacs**
3553 West Chester Pike, Unit #177
Newtown Square, PA 19073
212 257−0737
Email: jdi@alum.dartmouth.org
PRO SE

**John F. Skinner , III**
Skinner Rivard Law Offices
587 Union St, 2nd Fl
Manchester, NH 03104
603 622−8100
Fax: 888 912−1497
Email: attorneyskinner@gmail.com
*TERMINATED: 07/18/2013*
*LEAD ATTORNEY*

**Keith Mathews**
Skinner Rivard Law Offices
587 Union St, 2nd Fl
Manchester, NH 03104
603 622−8100
Email: keith.mathews@skinnerrivard.com
*TERMINATED: 07/18/2013*

**Patrick W. Rivard**
Skinner Rivard Law Offices
530 Chestnut St., 3rd Fl.
Manchester, NH 03101
603 622−8100
Email: pwrivard@skinnerrivard.com
*TERMINATED: 07/19/2013*

**Plaintiff**

**J. D. Isaacs**                            represented by   **J. D. Isaacs**
(See above for address)
PRO SE

V.

**Defendant**

**Dartmouth Hitchcock Medical Center**     represented by     **Christopher James Pyles**
Sulloway &Hollis PLLC
9 Capitol St
PO Box 1256
Concord, NH 03302−1256
603 223−2834
Email: cpyles@sulloway.com
*ATTORNEY TO BE NOTICED*

**Edward M. Kaplan**
Sulloway &Hollis
9 Capitol St
PO Box 1256
Concord, NH 03302−1256
603 224−2341
Email: ekaplan@sulloway.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mary Hitchcock Memorial Hospital**     represented by     **Christopher James Pyles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Edward M. Kaplan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dartmouth College Trustees**
*TERMINATED: 02/06/2013*     represented by     **Edward M. Kaplan**
Sulloway &Hollis PLLC
9 Capitol St
PO Box 1256
Concord, NH 03302−1256
603 224−2341
Email: ekaplan@sulloway.com
*ATTORNEY TO BE NOTICED*

**Kathleen C. Peahl**
Wadleigh Starr &Peters PLLC
95 Market St
Manchester, NH 03101
603 669−4140
Email: kpeahl@wadleighlaw.com
*TERMINATED: 02/06/2013*
*ATTORNEY TO BE NOTICED*

**Pierre A. Chabot**

Wadleigh Starr &Peters PLLC
95 Market St
Manchester, NH 03101
603 206−7204
Email: pchabot@wadleighlaw.com
*TERMINATED: 02/06/2013*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christine T. Finn**                    represented by   **Kathleen C. Peahl**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward M. Kaplan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pierre A. Chabot**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jim Yong Kim**                    represented by   **Kathleen C. Peahl**
*TERMINATED: 02/06/2013*                            (See above for address)
*TERMINATED: 02/06/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pierre A. Chabot**
(See above for address)
*TERMINATED: 02/06/2013*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dr. Douglas Noordsy**              represented by   **Kathleen C. Peahl**
*TERMINATED: 02/06/2013*                            (See above for address)
*TERMINATED: 02/06/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pierre A. Chabot**
(See above for address)
*TERMINATED: 02/06/2013*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dartmouth Medical School**
*TERMINATED: 03/05/2013*

**Defendant**

| | | | |
|---|---|---|---|
| **Trustees of Dartmouth College** | | represented by | **Kathleen C. Peahl** |
| *d/b/a Dartmouth Medical School* | | | (See above for address) |
| | | | *LEAD ATTORNEY* |
| | | | *ATTORNEY TO BE NOTICED* |

**Pierre A. Chabot**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/04/2013 | 106 | 36 | **ORDER granting in part and denying in part 71 Motion for Sanctions and Injunctive Order; denying as moot 72 Joint Motion for Hearing For Emergency Scheduling Conference; denying 75 Motion to Strike 72 Motion for Hearing; granting 76 Motion for Protective Order; granting 79 Motion for Protective Order; denying 86 Motion for Protective Order and quash eleven hour double deposition notice; denying without prejudice 89 Motion for Subpoena for PACER Service Center; denying 93 MOTION to Quash subpoenas for American University of the Caribbean and Keck School of Medicine, ; granting 98 MOTION to Quash Subpoena Replaces document no. 96 filed ; granting 100 Motion to Compel; granting 101 Motion for Protective Order; denying 102 Motion for Protective Order. So Ordered by Magistrate Judge Landya B. McCafferty.(ko) (Entered: 11/05/2013)** |
| 11/12/2013 | 109 | 13 | MOTION for Reconsideration re 106 Order on Motion for Sanctions, Order on Motion for Hearing, Order on Motion to Strike, Order on Motion for Protective Order, Order on Motion for Subpoena, Order on Motion to Quash, Order on Motion to Compel *or stay litigation pending First Circuit appeal* filed by J. D. Isaacs. Follow up on Objection on 11/29/2013. (Attachments: # 1 Exhibit A − cited source for ancillary subpoena jurisdiction, # 2 Exhibit (Affidavit) B− Plaintiff's description of inappropriate patient DRE exam)(Isaacs, J.) Modified on 11/13/2013 to clean up text (ko). (Entered: 11/12/2013) |
| 01/02/2014 | | 12 | **ENDORSED ORDER denying 109 Motion for Reconsideration re: 106 Order.** *Text of Order: Motion is denied in its entirety. To the extent plaintiff seeks to renew his request for a forensic expert, plaintiff shall file a separate motion seeking that relief −− in accordance with the court's order dated November 4, 2013 (document number 106).* **So Ordered by District Judge Landya B. McCafferty.(gla) (Entered: 01/03/2014)** |
| 01/09/2014 | 118 | 9 | NOTICE OF APPEAL as to Order on Motion for Reconsideration, by J. D. Isaacs.( Filing fee $ 505, receipt number 0102−1066866.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms &Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.] |

| | | | |
|---|---|---|---|
| | | | **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (Isaacs, J.) (Entered: 01/09/2014) |
| 01/15/2014 | 120 | 6 | Appeal Cover Sheet as to 118 Notice of Appeal filed by J. D. Isaac. (jab) (Entered: 01/15/2014) |
| 01/15/2014 | 121 | 8 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 106, 109, Endorsed Order on doc. no. 109, 118 and 120, re 118 Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date.(jab) (Entered: 01/15/2014) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

APPEAL COVER SHEET

1. D.C.# Case No. 12-cv-40-LM                          C.C.A.#  J. D. Isaacs

2. TITLE OF CASE:  J. D. Isaacs v. Dartmouth Hitchcock Medical Center, et al.

3. NAME OF COUNSEL FOR APPELLANT(S):
   See certified copy of docket (ECF registered users not provided with a copy of docket)

4. NAME OF COUNSEL FOR APPELLEE(S):
   See certified copy of docket (ECF registered users not provided with a copy of docket)

5. NAME OF JUDGE: Landya B. McCafferty, United States District Judge

6. COURT REPORTER(S) & DATES:                          Yes
   Diane Churas, 11/1/2013   Motions Hearing

   TRANSCRIPTS ORDERED / ON FILE                       NO

7. HEARING / TRIAL EXHIBITS                            N/A

8. COURT-APPOINTED COUNSEL                             NO

9. FEE PAID                                            YES

10. IN FORMA PAUPERIS                                  NO

11. MOTIONS PENDING                                    NO

12. GUIDELINES CASE                                    NO

13. RELATED CASES ON APPEAL                            NO

    C.C.A. # (IF AVAILABLE):

    DATE OF LAST N OF A:

14. SPECIAL COMMENTS:

FOR DISTRICT COURT USE ONLY

--ATTACH TO FILE COPY OF CCAINFO~

Prepared by: , Deputy Clerk

cc:    All counsel/pro se parties, with attachment(s):
                    date-stamped copy of notice of appeal
                    Transcript Report / Transcript Order Form
                    Court Reporter(s)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

J. D. Isaacs

v.

Case No. 12-cv-40-LM

Dartmouth Hitchcock Medical Center

## CLERK'S CERTIFICATE TO
## CIRCUIT COURT OF APPEALS

I, Judith A. Barrett, Deputy Clerk of the United States District Court for the District of New Hampshire, do hereby certify that the following are herewith transmitted to the First Circuit Court of Appeals to constitute the record on appeal

DOCUMENTS NUMBERED:    106, 109, endorsed order on doc. no. 109, 118 and 120.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of said Court, at Concord, in said District, on this day, January 15, 2014.

**DANIEL J. LYNCH, Clerk**

**By: /s/ Judith A. Barrett, Deputy Clerk**

**Jan 15, 2014**

cc:     J. D. Isaacs, pro se
        Christopher Pyles, Esq.
        Edward Kaplan, Esq.
        Kathleen Peahl, Esq.
        Pierre A. Chabot, Esq.

Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| DOCTOR J. D. ISAACS | ) |
| Plaintiff, *pro se*, | ) Case No. CV-12-40-LM |
| -V- | ) |
| | ) **NOTICE OF APPEAL** |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; | ) |
| DOCTOR CHRISTINE FINN; | ) |
| MARY HITCHCOCK MEMORIAL HOSPITAL; | ) |
| TRUSTEES OF DARTMOUTH COLLEGE; | ) |
| | ) |
| and JOHN DOE, | ) |
| Defendants. | ) |
| | ) |

JDIsaacs v. DARTMOUTH ET AL
Case No. 12-CV-40-LM

| | |
|---|---|
| 1 | **I. NOTICE OF APPEAL** |
| 2 | Notice is hereby given that *pro se* Plaintiff J.D. Isaacs hereby appeals to the United |
| 3 | States Court of Appeals for the First Circuit concerning an order denying sanctions, |
| 4 | injunctive relief, and discovery. |
| 5 | On November 4th, former Magistrate McCafferty issued an order denying Plaintiff's |
| 6 | Motion for Sanctions. The Plaintiff immediately sought reconsideration by Chief Judge |
| 7 | LaPlante. The Court subsequently appointed District Judge McCafferty to the case, upon |
| 8 | her confirmation as District Judge. District Judge McCafferty denied the Motion for |
| 9 | Reconsideration on January 2nd 2014. Review of the matter is sought. |
| 10 | A stay on current litigation has been denied by the District Court, and is hereby |
| 11 | requested by the First Circuit pending determination of sanctions and/or forensic |
| 12 | investigation of the destroyed emails. |
| 13 | |
| 14 | Respectfully submitted, this 9th day of January, 2014. |
| 15 | |
| 16 | |
| 17 | /s/ JD ISAACS |
| 18 | |
| 19 | J. D. ISAACS |
| 20 | 3553 West Chester Pike Unit 177 |
| 21 | Newtown Square, PA 19073 |
| 22 | |
| 23 | Plaintiff, *pro se* |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

JDIsaacs v. DARTMOUTH ET AL
Case No. 12-CV-40-LM

**CERTIFICATE OF SERVICE**

I, J.D. Isaacs, do declare as follows:

I certify that a copy of the foregoing NOTICE OF APPEAL  was delivered via USPS & electronically to counsel for the Defendants with counsel, and mailed conventionally to those without known counsel.

Executed on this 9th day of January, 2014.

_____ /s/ J. D. Isaacs

J. D. ISAACS

Plaintiff, *pro se*

JDIsaacs v. DARTMOUTH ET AL
Case No. 12-CV-40-LM

```
MIME-Version:1.0
From:ecf_bounce@nhd.uscourts.gov
To:nef@nhd.uscourts.gov
Bcc:
--Case Participants: Pierre A. Chabot (pchabot@wadleighlaw.com), Christopher James Pyles
(cpyles@sulloway.com, sparkinson@sulloway.com), Kathleen C. Peahl (kpeahl@wadleighlaw.com,
tveilleux@wadleighlaw.com), Edward M. Kaplan (ekaplan@sulloway.com,
jbatchelder@sulloway.com, jwallace@sulloway.com), J. D. Isaacs (jdi@alum.dartmouth.org)
--Non Case Participants:
--No Notice Sent:

Message-Id:1220005@nhd.uscourts.gov
Subject:Activity in Case 1:12-cv-00040-LM Isaacs v. Dartmouth Hitchcock Medical Center et
al Order on Motion for Reconsideration
Content—Type: text/html
```

## U.S. District Court

### District of New Hampshire

**Notice of Electronic Filing**

The following transaction was entered on 1/3/2014 at 8:12 AM EST and filed on 1/2/2014

**Case Name:** Isaacs v. Dartmouth Hitchcock Medical Center et al

**Case Number:** 1:12-cv-00040-LM

**Filer:**

**Document Number:** No document attached

**Docket Text:**
ENDORSED ORDER denying [109] Motion for Reconsideration re: [106] Order. *Text of Order: Motion is denied in its entirety. To the extent plaintiff seeks to renew his request for a forensic expert, plaintiff shall file a separate motion seeking that relief -- in accordance with the court's order dated November 4, 2013 (document number 106).* So Ordered by District Judge Landya B. McCafferty.(gla)

**1:12-cv-00040-LM Notice has been electronically mailed to:**

Christopher James Pyles   cpyles@sulloway.com, sparkinson@sulloway.com

Edward M. Kaplan   ekaplan@sulloway.com, jbatchelder@sulloway.com, jwallace@sulloway.com

J. D. Isaacs   jdi@alum.dartmouth.org

Kathleen C. Peahl   kpeahl@wadleighlaw.com, tveilleux@wadleighlaw.com

Pierre A. Chabot   pchabot@wadleighlaw.com

**1:12-cv-00040-LM Notice, to the extent appropriate, must be delivered conventionally to:**

Dr. Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073
Telephone: (212) 257-0737
Email: jdi@alum.dartmouth.org

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DOCTOR J. D. ISAACS | ) |
| | ) |
| Plaintiff, *pro se*, | ) Case No. CV-12-40-JL |
| | ) |
| -V- | ) |
| | ) |
| DARTMOUTH HITCHCOCK MEDICAL CENTER; ) | **MOTION TO RECONSIDER** |
| DOCTOR CHRISTINE FINN; | ) **MAGISTRATE ORDER OR** |
| MARY HITCHCOCK MEMORIAL HOSPITAL; | ) **STAY LITIGATION PENDING** |
| TRUSTEES OF DARTMOUTH COLLEGE; | ) **APPEAL** |
| | ) |
| | ) |
| and JOHN DOE, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## MOTION TO RECONSIDER MAGISTRATE ORDER OR STAY LITIGATION PENDING APPEAL

Plaintiff hereby motions for reconsideration of the Magistrate Judge's November 4th order, in light of anticipated appeal to the First Circuit. Plaintiff seeks reconsideration of select portions of the Magistrate's order: Section #6(Docket 89), Section #2(Docket 76), Section #7(Docket 71), and Section #8(Docket 93). Section 7 , denying sanctions & injunction , will be immediately appealed should reconsideration be denied. Plaintiff seeks reconsideration by Chief Judge Laplante for this motion and future matters in this case, for case continuity in anticipation of the Magistrates' appointment as a District Judge.

### Review of Docket No 89 for PACER Subpoena

After Docket No 89 was filed, Plaintiff became aware of regulations regarding "ancillary" out-of-district subpoenas (Exhibit A). It is admittedly difficult for Plaintiff to find authoritative or clear sources on *pro se* issuance of out-of-district subpoenas, but now believes he filed Motion/Docket No 89 erroneously in this Court. As a matter of law, Plaintiff now believes this Court does not have jurisdiction over the PACER subpoena Plaintiff seeks for records located in San Antonio. Plaintiff will be filing ancillary motions in the USDC Western Texas to obtain the PACER records.

Furthermore, Plaintiff reasserts and references all arguments made in Docket No 89 as to the critical nature of the PACER meta-data. The PACER meta-data is not in any way privileged, and even if it were, Plaintiff has shown good cause for the issuance and enforcement of a subpoena . A simple PACER search (which the US Court Administrator in San Antonio has already performed) has the possibility to significantly simplify this litigation and provide "smoking gun" evidence of Plaintiff's claims.

Considering Plaintiff's entire lifetime of privileged medical and psychotherapy notes were granted by the Magistrate, it appears reasonable that easily obtainable, non-privileged, and critical meta-data from PACER should be discovered.

In light of this, Plaintiff asks this Court to declare whether or not it has jurisdiction over the PACER records in San Antonio, and if so, reconsider the enforcement of the PACER records production.

## Review of Docket No 93 to quash Florida & California Subpoena

As stated above, Plaintiff recently became aware of regulations regarding "ancillary" out-of-district subpoenas. It appears Plaintiff filed a timely motion to quash these subpoenas, but did so in the wrong district, as the motion should have been filed in the South Florida and Central California districts.

Plaintiff asserts that the California USC subpoena is a critical issue in this lawsuit, that deserves scrutinized review. An ancillary denial of this motion to quash may be immediately appealed, and Plaintiff intends to exhaust all federal judiciary appeals (if necessary) on this matter that effectively determines his future employability in America. Furthermore, Plaintiff does not believe the Defendants have shown good cause to "break" the seal USC entered into agreement with Plaintiff concerning his academic records. The mere fact that the settlement agreement mentioned subpoena compliance does not establish good cause to issue *any* subpoena.

As a matter of law, Plaintiff now is concerned that this Court never had jurisdiction to quash the subpoenas. Because the Plaintiff was confused where to file an out-of-district ancillary motion to quash, this Court should declare whether or not it ever had jurisdiction over the USC records sought, and if not, refer Plaintiff's motion to the proper district so that Plaintiff's timeliness to quash the subpoenas is maintained. If this Court does have jurisdiction, Plaintiff seeks scrutinized reconsideration of the motion.

## Review of Docket No 76 to quash Jim Yong Kim's Subpoena

With two weeks left in scheduled discovery, there has been no explanation of how Plaintiff's emails disappeared, two days after Jim Yong Kim received a Rule 34 notice to

1    preserve the emails. A 30(b)(6) deposition on Dartmouth College yielded a completely

2    unprepared designee, with no information about Kim or the disappearing emails. Since

3    other attempts of discovery have failed, with two weeks left in scheduled discovery, the

4    Court must grant a deposition of Dr Kim. Furthermore, it is believed Jim Yong Kim

5    knows about the alleged fraud, assented to Plaintiff's termination, and Plaintiff was

6    suspiciously terminated without a fair hearing, two days prior to Kim's appointment to the

7    World Bank.

8

9    **Review of Docket No 71 to for Sanctions & Injunction**

10    Plaintiff seeks review of the Motion for Sanctions & Injunctive Relief by Your Honor.

11    Plaintiff asserts that all cases cited in the Memorandum of Law mandate sanctions against

12    Dartmouth. At a minimum, forensic assessment by an *independent, nationally recognized*

13    *e-Discovery firm* determining how and why emails pertaining to Plaintiff were deleted

14    should be conducted, and adverse jury instructions issued. It is noted that the Magistrate's

15    hearing and order discussed *forensic recovery* of the DHMC Outlook, but Plaintiff's

16    Motion for Sanctions Proposed Injunction clearly requests *forensic investigation*:

17                 "An independent e-Discovery forensics firm to assess, report, and

18                 convey to the Court (with email archives under seal, and for Plaintiff's

19                 inspection) the following:

20                 a) Defendants email and backup archival system technical overview

21                 b) All email (Dartmouth and DHMC) archives containing the search

22        term "Isaacs" for the years spanning 2011-2012

23        **c) Any evidence (physical loss, meta data, etc) the independent firm**

24        **possesses to implicate or exonerate Defendants' of willful and/or negligent**

25        **records loss."**

26

27    The Magistrate permanently exonerated the Defendants for an email account that

28    disappeared three months early, and refused to even allow a forensic eDiscovery team to

assess how (and how much other) evidence was destroyed. Of all the authority and cases cited by Plaintiff in his *Memorandum of Law*, it is unclear how the Court may allow Dartmouth to go scot-free for intentional destruction of evidence pertaining to federal litigation.

At the hearing conducted by the Magistrate, Dartmouth's attorneys could not even accurately describe the date Plaintiff's DHMC Outlook account was deleted, let alone, explain how or why it occurred. Attorney Kaplan mentioned a deletion in March/April 2012, when in fact, Plaintiff has evidence the account was deleted in January 2012. Likewise, in a 30(b)(6) Deposition on Dartmouth College (Exhibit B), the designee was unable to explain how or why a Dartmouth College employee (Christine Fitts) deleted the account. The fact is that Dartmouth intentionally and willfully deleted evidence.

The Plaintiff asserts that if the Defendants scrambled to delete his Outlook account, in all likelihood they also deleted more damaging email evidence (referred to as "smoking gun" evidence in the hearing). The Magistrate seems to misinterpret the Plaintiff's assertion that more damaging evidence existed (and should be assessed forensically), to mean that Plaintiff's DHMC Outlook emails were unimportant. To be clear, Plaintiff's emails would show a systematic pattern of criticizing the Plaintiff from Day 1. They would evidence of his worsening mental and physical condition, and disregard of this condition by Defendants. They would show sarcastic comments from Dr Guez that Plaintiff's last week at DHMC would be "a good week." They would lead to further discovery questioning and document production. In short, the emails are 'highly important' and could help a jury decide 'more likely than not.' The emails are not "smoking gun" (as far as Plaintiff ever observed) evidence of how and when Dartmouth learned about USC and Arizona. Nonetheless, important evidence was deleted, and Plaintiff suggests 'smoking gun' evidence was also deleted if important evidence was deleted. To clarify these matters is precisely why Plaintiff seeks a forensic investigation.

The federal rules do not allow intentional destruction of known relevant evidence. Plaintiff was abused over six months. He issued criminal allegations in the DHMC ED on January 13th 2012, and several days later, after asking Jim Yong Kim to preserve ESI, the ESI was scoured.

Additionally, the "Addendum" requests production of important patient records, in light of the fact all "smoking gun" emails were probably deleted. The Court should be particularly liberal in granting discovery, since evidence had been destroyed. Plaintiff attaches Exhibit B, his affidavit, to support production of the patient records sought in the Addendum.

To allow Dartmouth's intentional email destruction to go unsanctioned creates precedent that damages the integrity of the Federal justice system. Without clear penalties for ESI destruction, all a defendant needs to do to subvert a claim is merely destroy evidence and discredit the victim (i.e. terminate his employment) – which is what happened in this instance. Plaintiff will exhaust all possible appeals on this matter, and respectfully asks Your Honor to reconsider the subject with full scrutiny.

## Conclusion

The Plaintiff respectfully requests the Court rule on this motion by December 2nd, so that he may file a timely appeal in the event the motion is denied. In the alternative, pursuant to Federal Rules of Appellate Procedure 4(a)(5), Your Honor may extend the deadline for a Notice of Appeal to allow consideration of this motion.

It is noted that the Magistrate ordered that discovery requests shall be completed also by December 2nd. This deadline is no longer feasible for the Plaintiff in light of the destroyed evidence. Discovery which would have been straightforward , had evidence been

1    preserved, now requires expansion to seek additional witnesses and records . Plaintiff now

2    intends to obtain out-of-district subpoenas in Texas, Arizona, DC, and California. He is

3    not able to arrange all this, and manage the other aspects of pending litigation, in the next

4    two weeks.

5

6    If this Court affirms the Magistrate's denial of the Motion for Sanctions & Injunction,

7    Plaintiff requests a stay on all litigation pending appeal. At a minimum, sanctions should

8    be entered for an adverse jury instruction against the Defendants. To move forward with

9    summary judgment deliberations, or a jury trial, while Plaintiff is appealing the adverse

10    jury instruction , might necessitate a second trial. To avoid unnecessary efforts by all

11    parties involved, a stay is reasonable.

12

13    No further Memorandum of Law is required as Plaintiff relies on the previously submitted

14    memorandum for sanctions.

15

16    The Defendants did not assent to this motion.

17

18

19    Submitted on this 12th day of November, 2013.

20

21

22

23                         /s/ J.D. Isaacs

24                         J. D. ISAACS

25                         Plaintiff, *pro se*

26

27

28

1                         **CERTIFICATE OF SERVICE**

2

3       I, J.D. Isaacs, do declare as follows:

4

5 I certify that a copy of the foregoing **MOTION TO RECONSIDER MAGISTRATE ORDER OR**

6 **STAY LITIGATION PENDING APPEAL** was delivered electronically to counsel for the

7 Defendants with counsel, and mailed conventionally to those without known counsel.

8

9       Executed on this 12th day of November, 2013.

10

11

12

13                                 /s/ J.D. Isaacs

14                                   J. D. ISAACS

15                                  Plaintiff, *pro se*

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRACTICAL LAW COMPANY®**


# Subpoenas: Using Subpoenas to Obtain Evidence

David J. Lender, Jared R. Friedmann and Jason B. Bonk, Weil, Gotshal & Manges LLP

This Practice Note analyzes the key issues that parties should consider when they use subpoenas to obtain evidence in federal civil litigation. Specifically, this Note addresses: the situations in which a party should use a subpoena, what information must be included in a subpoena, who may issue a subpoena, how to serve a subpoena, how to calculate the fee to be paid to the subpoenaed witness, how to provide notice of the subpoena to the other parties, how to enforce the subpoena, and how to appeal a court order granting or denying the discovery sought in a subpoena.

---

**This is just one example of the many online resources Practical Law Company offers.**

To access this resource and others, visit **practicallaw.com.**

---

Subpoenas are commonly used in civil litigation to obtain evidence from individuals, corporations and other entities who are not parties to a lawsuit. This Note analyzes the key issues that parties should consider when they use subpoenas to obtain evidence in federal civil litigation.

## WHEN TO USE A SUBPOENA

Depending on the situation, a subpoena may or may not be the preferable method for obtaining evidence from another person or entity. This section discusses when parties should use subpoenas in federal civil litigation and when they should look to the other vehicles permitted by the Federal Rules of Civil Procedure (FRCP) for obtaining discovery.

## Parties and Non-parties

Subpoenas are typically used by parties in a lawsuit to obtain evidence from non-party witnesses. A party does not need to use a subpoena to obtain evidence from another party. It can instead use any of the discovery devices contained in Rules 26 to 37 of the FRCP. However, courts have held that a party's use of a subpoena to obtain evidence from another party is not necessarily prohibited (see *Mortg. Info. Servs. v. Kitchens, 210 F.R.D. 562, 563-66 (W.D.N.C. 2002)*; but see *Hasbro, Inc. v. Serafino, 168 F.R.D. 99, 100 (D. Mass. 1996)*). For example, a party may wish to use a subpoena to ensure that the original version of a document already produced by a party in discovery is available at trial. In addition, because the FRCP does not require a party to appear at trial, a subpoena may be necessary to ensure his attendance (see *McGill v. Duckworth, 944 F.2d 344, 353 (7th Cir. 1991)*, overruled on other grounds by, *Farmer v. Brennan, 511 U.S. 825 (1994)*).

## Corporate Officers and Employees

In the corporate context, there is occasionally a question about which types of employees are subject to discovery under FRCP 26 to 37 and which employees must be subpoenaed under FRCP 45. In general, a corporate party's officers, directors and managing agents do not need to be subpoenaed, but can be commanded to appear for a deposition under a notice issued under FRCP 30 (see *Stone v. Morton Int'l, Inc., 170 F.R.D. 498, 503-04 (D. Utah 1997)*). Lower-level corporate employees, however, oftentimes must be subpoenaed (see *O'Connor v. Trans Union Corp., No. 97-cv-4633, 1998 WL 372667, at *2 (E.D. Pa. May 11, 1998)*).

## Indirect Non-party Discovery

In certain circumstances, non-party discovery may be obtained indirectly through the parties. For example, if a corporation is a party to a lawsuit, and is served with a document request under FRCP 34, it must produce all responsive documents within its control even if those documents are in the physical possession of affiliated companies or other third parties that are not parties to the underlying action (see *Gen. Envt'l Sci. Corp. v. Horsfall, 136 F.R.D. 130, 133-34 (N.D. Ohio 1991)*; see also *Dietrich v. Bauer, No. 95-cv-7051, 2000 WL 1171132, at *2-5 (S.D.N.Y. Aug. 16, 2000)*; *Addamax Corp. v. Open Software Found., Inc., 148 F.R.D. 462, 468 (D. Mass. 1993)*; *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., No. 11-cv-1299, 2012 WL 1414070, at *10 (S.D.N.Y. Apr. 20, 2012)*).

For further analysis of the issues that courts consider in determining whether a corporation practically controls documents held by an affiliate, see Article, *Protecting Foreign Corporations from US Discovery (http://us.practicallaw.com/6-502-5304)*.

## The Cooperative Witness

Before subpoenaing a witness, counsel for the requesting party should investigate whether the witness will voluntarily provide the sought-after evidence. The requesting party may be able to save a significant amount of time and money if the witness is willing to voluntarily comply with an informal request for evidence. However, even if the witness agrees to voluntarily provide the requested

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.

evidence, a party may still want to use a subpoena (backed by the threat of contempt sanctions for disobedience) to ensure the witness' continued cooperation.

## TYPES OF SUBPOENAS

A subpoena may command a witness to:

- Testify at a deposition or trial (testimonial subpoena).
- Produce, or make available for inspection, documents, electronically stored information (ESI) or other tangible items (document subpoena).

A subpoena that seeks documents from a witness may be combined with a subpoena seeking that person's testimony as well (*FRCP 45(a)(1)(C)*). Alternatively, the requesting party may serve separate document subpoenas and testimonial subpoenas directed to the same person (*FRCP 45(a)(1)(C)*).

## REQUIRED CONTENTS OF THE SUBPOENA

A subpoena issued in the context of federal civil litigation must contain the following information:

- The identity of the court from which the subpoena was issued.
- The identity of the court in which the underlying action is pending, along with a proper citation of the title of the action and the civil action number.
- The identity of the person to whom the subpoena is directed.
- The text of FRCP 45(c) and (d), which set out the witness' rights and duties in responding, objecting or moving to quash the subpoena.
- The time and place for either the production or inspection of documents or for attendance at a hearing, trial or deposition (known as the return date).
- The categories of documents sought (if the subpoena commands the production or inspection of documents).
- The method for recording testimony (if the subpoena seeks testimony).

(*FRCP 45(a)(1)(A)-(B)*.)

In addition:

- The subpoena must bear the issuer's signature (*FRCP 45(a) (3)*).
- If ESI is sought, the subpoena may specify the form(s) in which the ESI is to be produced (*FRCP 45(a)(1)(C)*). The specified form, however, must be reasonable.
- If the subpoena requires a corporation (or other organization) to designate a representative to testify about certain matters, the subpoena must advise the non-party organization of its duty to make this designation (*FRCP 30(b)(6)*).

Many attorneys use the official subpoena forms available for download on the Administrative Office of the US Courts' *Court Forms by Category* webpage. The official form for a subpoena commanding a witness to:

- Attend a hearing or trial is the AO 088.
- Appear for a deposition is the AO 088A.
- Produce documents, information, or objects or to permit inspection of premises is the AO 088B.

If the chosen form does not provide enough space for all of the required information, as is often the case when a subpoena calls for the production of many types of documents or requests a company representative to testify about many issues, the issuing party may include this additional information as an attachment (also known as a "rider") to the subpoena.

## ISSUING THE SUBPOENA

Rule 45(a) of the FRCP speaks of "issuing" a subpoena. The term "issuing" as used in this context has two distinct meanings:

- Who can physically sign the subpoena.
- Which court's name must appear on the face of the subpoena.

As explained below, a subpoena must be properly "issued" on both levels to be valid and enforceable.

### Who May Issue the Subpoena?

The clerk of court or a qualified attorney, acting in the capacity of an officer of the court, can "issue" a subpoena (*1991 Advisory Committee Notes to FRCP 45(a)(3)*). This simply means that the court clerk or any attorney who is authorized to practice in the issuing court signs the subpoena on behalf of the issuing court (*FRCP 45(a)(3)(A)*).

Note that an attorney who is not authorized to practice in the issuing court may still issue a document or deposition subpoena from that court as long as he is authorized to practice (even if only pro hac vice) in the court where the underlying action is pending (*FRCP 45(a)(3)(B); 1991 Advisory Committee Notes to FRCP 45(a)(3)*). For example, an attorney representing a party in a lawsuit pending in the Southern District of New York (SDNY) may issue a deposition subpoena out of a California federal district court in connection with the SDNY lawsuit as long as that attorney is admitted in the SDNY.

Although FRCP 45 allows an attorney to issue a subpoena out of a federal district court in which he is not admitted, it is silent about whether that attorney may take additional steps in connection with the subpoena, such as deposing the witness in the district of the issuing court, without first becoming admitted to practice there. The answer to this question may be found in the district court's local rules (see, for example, *E.D. Mich. L. Civ. R. 83.20(i) (1)(E)(ii)* (non-member attorney may conduct a deposition in the Eastern District of Michigan under certain circumstances); see also *Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 820 (9th Cir. 2009)* ("Admissions rules and procedure for federal court

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.    2

are independent of those that govern admission to practice in state courts")). If the court's local rules are unclear on this point, check with a local attorney to see what the common practice is in the issuing court.

An attorney should quickly begin the process of getting admitted in the issuing court if admission is a prerequisite to taking a deposition pursuant to a subpoena issued out of that court. Depending on the circumstances, either formal admission or *pro hac vice* admission should be sought. In either situation, it is advisable (and sometimes necessary) to obtain the assistance of local counsel to help with the admissions process.

## From which Court Must the Subpoena Issue?

FRCP 45 requires subpoenas to be "issued" out of a court. The physical act of issuing a subpoena from a court is simple: the issuing party's attorney need only place that court's name at the top of the subpoena. However, the legal effect of issuing a subpoena from a court is significant: the subpoena becomes a judicial command emanating from the court whose name appears therein, the disobedience of which may be punishable as a contempt of court (*FRCP 45(e)*).

The issuing court is the court to which applications to quash, modify or compel compliance with the subpoena must be made. It is also the court with the power to hold a non-compliant witness in contempt (*1991 Advisory Committee Notes to FRCP 45(a)(2)*).

The party seeking discovery is responsible for choosing the court from which to issue the subpoena. A subpoena that is issued out of the wrong court is void and unenforceable (see *Doe I v. Pauliewalnuts, No. 08-mc-0001, 2008 WL 4326473, at *2-3 (W.D. Va. Sept. 19, 2008); Echostar Comm.Corp. v. The News Corp. Ltd., 180 F.R.D. 391, 396-97 (D. Colo. 1998)*). As discussed in more detail below, the party seeking discovery must consider several factors to determine which court is the appropriate "issuing court" in a given case.

### Trial Subpoenas

Deciding the appropriate court from which to issue a trial subpoena is a straightforward task. The subpoena must issue from the court where the underlying action is pending (*FRCP 45(a)(2)(A)*).

### Deposition and Document Subpoenas

Deciding the appropriate court from which to issue a document or deposition subpoena is more complicated. Rule 45(a)(2)(B)-(C) of the FRCP states that a deposition or document subpoena must issue from the district court for the judicial district where the deposition is to occur or the document production/inspection is to be held.

However, this does not mean that the party seeking discovery can arbitrarily choose any jurisdiction in which to conduct a deposition or initiate a document production and/or inspection and simply issue a subpoena from the district court located in

that jurisdiction. Instead, when choosing the place of deposition or document production/inspection, the issuing party must ensure that:

- The issuing court has personal jurisdiction over the witness. In other words, it must be procedurally proper to personally serve the subpoena on the witness within the district of the issuing court (or outside that district in certain circumstances) (*FRCP 45(b)(2)*; see also *Place of Service*).

- For subpoenas commanding deposition testimony, the place of deposition is no more than 100 miles from where the non-party witness lives, works or regularly transacts business in person (*FRCP 45(c)(3)(A)(ii)*; see also *Practice Note, Subpoenas: Responding to a Subpoena: Travel in Excess of 100 Miles (http://us.practicallaw.com/1-503-1741)*).

Take, for example, the situation where a party wants to depose a non-party witness who lives, works and regularly transacts business only in California. The party issues a subpoena out of the SDNY and serves the subpoena on the witness in California, directing him to appear for a deposition located within the SDNY. Technically, the subpoena was properly "issued" from the SDNY under FRCP 45(a)(2). This is because the designated location of the commanded deposition is within the SDNY. However, the SDNY subpoena is neither valid nor enforceable because:

- It was served outside the jurisdiction of the issuing court (that is, outside the SDNY), therefore violating the guidelines of FRCP 45(b)(2). Note that this hypothetical did not involve a federal statute authorizing nationwide service of process. If it had, the result may have been different (see *Authorized by Federal Statute*).

- It requires the witness to travel more than 100 miles from where he physically lives, works and regularly transacts business, therefore violating the guidelines of FRCP 45(c)(3)(A)(ii).

One issue that commonly arises with document subpoenas is whether the subpoena must issue out of the court for the district where the documents are located or, alternatively, the district where the production is to be made (assuming the two are different). The prevailing rule is that the subpoena must issue out of the court for the district where the production is to be made. If the issuing court has jurisdiction over the witness (and the subpoena is otherwise valid), the witness must bring any requested documents within its possession, custody or control located outside the district of the issuing court into the district of the issuing court for production (*1991 Advisory Committee Notes to FRCP 45(a)(2); Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 412-13 (3d Cir. 2004); In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 494-95 (E.D. Pa. 2005)* (compelling production of documents held overseas)).

## SERVING THE SUBPOENA

A subpoena is a form of judicial process (similar to a summons) by which an issuing court obtains jurisdiction over a non-party.

    Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.

To initiate this process, the issuing party must properly serve the subpoena. As explained below, the rules governing service of a subpoena are fairly strict. Non-compliance with these rules may invalidate the subpoena.

### Who May Serve?

Any person who is not a party to the underlying action and is at least 18 years of age may serve the subpoena (*FRCP 45(b)(1)*).

### What Should be Served?

The person serving the subpoena should serve a copy of the subpoena on the witness (*FRCP 45(b)(1)*). The issuing party should retain the original subpoena and not file it with the court unless there is a valid basis for doing so, for example, if the issuing party desires to submit the subpoena as an exhibit to a motion (*2000 Advisory Committee Notes to FRCP 5(d)*).

### Method of Service

Most courts hold, and the plain text of FRCP 45 seems to require, that a subpoena must be **hand-delivered** to the person named therein (*FRCP 45(b)(1); Omikoshi Japanese Restaurant v. Scottsdale Ins. Co., No 08-cv-3657, 2008 WL 4829583, at *1 (E.D. La. Nov. 5, 2008)*). If the subpoena is directed to a corporation (or other entity) it must be personally served on a corporate officer or other agent authorized under FRCP 4 to accept service of process (see *In re Motorsports Merchandise Antitrust Litig., 186 F.R.D. 344, 348 (W.D. Va. 1999)*).

The rigid rules governing the method of subpoena service are quite different from the more liberal rules governing service of a summons (compare *FRCP 4(e)-(k)* with *FRCP 45(b)(1)*). The issuing party risks having the subpoena quashed if the party serves it by mail, overnight carrier or delivers it to the witness' attorney. However, some courts have held that a subpoena may be served by methods other than hand-delivery (see, for example, *Hall v. Sullivan, 229 F.R.D. 501, 505 (D. Md. 2005)*).

To avoid a challenge directed to the propriety of service, counsel should take the conservative approach and arrange for hand-delivery by an appropriate process server directly to the witness or corporate representative.

### Timing of Service

FRCP 45 does not provide a minimum time period within which compliance with a subpoena may be commanded. When a subpoena is issued during discovery, typically the issuing party may allow up to 30 days after service to comply with a subpoena, but may demand compliance within a shorter time period if reasonable under the circumstances (see *Subair Sys., LLC v. Precisionaire Systems, Inc., No. 08-cv-60570, 2008 WL 1914876, at *2 & n. 4 (S.D. Fla. Apr. 26, 2008)*) (10 days notice reasonable under FRCP 45)).

The issuing court's local rules may, however, provide a minimum time period for compliance (see, for example, *E.D. Va. L. Civ.*

*R. 45(E)* (requiring trial subpoena to be served no later than 14 days before the return date); *E.D. Va. L. Civ. R. 45(F)* (requiring deposition subpoenas to be served no later than 11 days before the date of the deposition)).

Generally, a subpoena may not be served before the parties conduct their FRCP 26(f) pre-trial discovery conference, also known as a meet and confer (*FRCP 26(d)(1)*). In addition, counsel should ensure that the subpoena is served (and that the return date is designated) before any related discovery deadlines (see *Ponson v. BellSouth Telecomm., Inc., No. 09-cv-0149, 2010 WL 1552802, at *3 (E.D. La. Apr. 16, 2010); Surbella v. Foley, No. 05-cv-0758, 2006 WL 3007429, at *1 (S.D. Ohio Oct. 20, 2006)*).

### Place of Service

As discussed in more detail below, a federal subpoena may be served:

- Within the district of the issuing court (see *Service Within District of Issuing Court*).
- Outside the district of the issuing court, but within 100 miles of the location specified for the deposition, hearing, trial or production or inspection of documents (see *100-Mile Bulge*).
- Anywhere within the state where the issuing court sits, if that state gives its own courts of general jurisdiction statewide subpoena power (see *Jurisdiction Co-extensive with State Court Subpoena Power*).
- At any other location authorized by the court based on a motion for good cause, if a federal statute so provides (see *Authorized by Federal Statute*).

(*FRCP 45(b)(2)(A)-(D)*.)

#### Service Within District of Issuing Court

An individual's presence within the issuing court's jurisdiction (even if only a transitory presence) is generally sufficient to bring the individual within the reach of the court's subpoena power (see *First American Corp. v. Price Waterhouse LLP, 154 F.3d 16, 20-21 (2d Cir. 1998)*). However, if the witness enters into that jurisdiction in connection with an unrelated action, he is immune from service during the time he is present for purposes of the unrelated action (see *Estate of Ungar v. Palestinian Auth., 396 F. Supp. 2d 376, 379-382 (E.D.N.Y. 2005)*).

Jurisdiction over a corporation may generally be obtained by serving a corporate officer (or other agent authorized to receive service of process) located within the district of the issuing court. In the typical situation, the process server will hand-deliver the subpoena to a corporate officer or agent at the corporation's office or, alternatively, at the office of the corporation's registered agent.

However, some courts hold that serving a subpoena on an officer (or other agent) of a foreign corporation does not bring that corporation within the issuing court's jurisdiction unless the foreign corporation has additional "minimum contacts" with the forum (see *Estate of Ungar v. Palestinian Auth., 400 F. Supp. 2d 541, 547-54 (S.D.N.Y. 2005); Elder-Beerman Stores Corp. v.*

*Federated Dept. Stores, Inc., 45 F.R.D. 515, 516-18 (S.D.N.Y. 1968)*). Other courts have held, generally, that service of process on a corporate officer within the forum state suffices to bring a foreign corporation within the district court's jurisdiction without any independent minimum contacts (see *N. Light Tech., Inc. v. N. Lights Club, 236 F.3d 57, 63-64 & n. 10 (1st Cir. 2001); Oyuela v. Seacor Marine (Nigeria), Inc., 290 F. Supp. 2d 713, 719-20 (E.D. La. 2003)*; but see *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd., 626 F. Supp. 2d 837, 849-51 (N.D. Ill. 2007)*).

Jurisdiction may be obtained over a partnership by serving a partner while he is present in the district of the issuing court (see *First Am. Corp., 154 F.3d at 20-21*). Serving a subpoena on a partner of a foreign partnership while he is in the forum state suffices to bring the partnership within the issuing court's jurisdiction whether or not the partnership has additional minimum contacts with the forum (see *First Am. Corp., 154 F.3d at 19-21*).

### 100-Mile Bulge

The expansion of the issuing court's jurisdiction to issue subpoenas outside of its district but within 100 miles of the place specified for the deposition, hearing, trial, production or inspection is commonly referred to as the "100-mile bulge." Courts generally measure this bulge as a straight line between the place of service and the place specified for testimony or the production or inspection of documents (see *Hill v. Equitable Bank, Nat. Assn., 115 F.R.D. 184, 186 (D. Del. 1987)*).

### Jurisdiction Co-extensive with State Court Subpoena Power

Under FRCP 45(b)(2)(C), a subpoena issued by a federal district court may be served anywhere within the state where the district court sits if that state gives its own courts of general jurisdiction statewide subpoena power. This rule is somewhat less relevant in those states, such as Wyoming, where there exists only a single federal judicial district. However, this rule can be quite important where the issuing court sits in a state with multiple judicial districts, such as New York.

Take, for example, the situation where a party issues a subpoena out of the SDNY commanding a non-party located 400 miles away in Buffalo, New York (which is in the Western District of New York) to produce documents and appear for trial in the SDNY. The subpoena in this hypothetical is valid even though it was served outside the SDNY and more than 100 miles from the place of production and attendance. This is because the Supreme Court of the State of New York (the state court of general jurisdiction in New York) has statewide subpoena power (*FRCP 45(b)(2)(C)*; see also *NY Const. Art. VI § 1(c)*).

Note, however, that the issuing party in this hypothetical could not have commanded the non-party witness to appear for a **deposition** in the SDNY if it turned out that the SDNY is more than 100 miles from where the non-party witness lives, works or regularly transacts business in person (*FRCP 45(c)(3)(A)(ii)*; see also *Practice Note, Subpoenas: Responding to a Subpoena:*

*Travel in Excess of 100 Miles (http://us.practicallaw.com/1-503-1741)*). In addition, the court in this hypothetical could, in its discretion, have quashed or modified the trial subpoena if it would require the witness to incur a substantial travel expense (*FRCP 45(c)(3)(B)(iii)*; see also *Practice Note, Subpoenas: Responding to a Subpoena: Substantial Expense While Traveling (http://us.practicallaw.com/1-503-1741)*).

### Authorized by Federal Statute

On timely motion, and for good cause, the issuing court may permit a subpoena to be served in a jurisdiction other than those identified in FRCP 45(b)(2)(A)-(C) if a federal statute authorizes such service (*FRCP 45(b)(2)(D)*). This essentially gives federal courts nationwide subpoena power in certain cases. An example of a federal statute authorizing nationwide subpoena service is the Multiparty, Multiforum Trial Jurisdiction Act (*28 U.S.C. § 1785*).

### Constraints on Court's Jurisdiction

Keep in mind that even if the issuing court has jurisdiction over the witness under FRCP 45(b)(2), a subpoena may still be invalid or unenforceable if it commands:

- Production or inspection of documents, or a witness' attendance, in a judicial district that is different from the district where the issuing court is located (*FRCP 45(a)(2)*; see also *From which Court Must the Subpoena Issue?*).

- A person who is neither a party nor a party's officer or agent to travel more than 100 miles from where that person lives, works or regularly transacts business in person to testify at a deposition (or a hearing or trial in certain circumstances) (*FRCP 45(c)(3)(A)(ii); FRCP 45(c)(3)(B)(iii)*; see also *Practice Note, Subpoenas: Responding to a Subpoena: Travel in Excess of 100 Miles (http://us.practicallaw.com/1-503-1741)* and *Substantial Expense While Traveling (http://us.practicallaw. com/1-503-1741)*).

## Proof of Service

Following service of a subpoena, the process server must prepare a certified proof of service (*FRCP 45(b)(4)*). This may be in the form of an affidavit or declaration (the latter does not require notarization). Alternatively, the server may use the "Proof of Service" section of the standard subpoena form found on the Administrative Office of the US Courts' *Court Forms by Category* webpage.

The proof of service must identify the server by name, the date and manner of service and the name(s) of the person(s) served (*FRCP 45(b)(4)*). In addition, for subpoenas commanding attendance at a deposition or trial, the server should state the amount of the witness fee that was tendered as compensation for testimony commanded by the subpoena (see *Witness Fees*).

The issuing party should retain the server's original proof of service. The proof of service does not need to be served on any of the other parties and should not be filed with the court unless there is a reason to do so, for example, if the issuing party wishes to attach the proof of service as an exhibit to a motion (*FRCP 45(b)(4)*).

## WITNESS FEES

For subpoenas requiring a person's attendance, the issuing party must advance the witness compensation for:

- One day's attendance.
- The round-trip mileage fee for travel to and from the place of attendance.

(*FRCP 45(b)(1)*.)

This section outlines the key issues for counsel to consider when tendering the requisite attendance and mileage fees to a subpoenaed witness.

### Daily Attendance Fee

FRCP 45(b)(1) does not actually set the daily attendance fee for appearance at a deposition, hearing or trial. The fee is, instead, set by 28 U.S.C. § 1821. Under 28 U.S.C. § 1821(b), the typical daily attendance fee for witnesses in federal proceedings is $40. This amount may vary depending on whether attendance is required by an expert or other specialized witness that may have an established hourly rate.

### Mileage Fee

The mileage fee provided by the issuing party must be tendered irrespective of the distance that the witness travels to attend the deposition, hearing or trial, although it only needs to be a reasonable estimate of the distance traveled (see *In re Dennis, 330 F.3d 696, 705 (5th Cir. 2003)*).

The mileage fee is calculated by multiplying the rate per mile (presently set at $0.555 for travel by automobile) by the number of miles traveled to and from the place of attendance. Although the basic calculation is simple and straightforward, it rests on a complex and interlocking web of federal statutes and regulations. A good rule of thumb to avoid such complexities is to simply use an online mapping service such as MapQuest or Google Maps to determine the driving distance from the witness' place of origin (whether home or office) to the location of the deposition, and then multiply that distance by $0.75 to ensure that you are advancing a sufficient fee (for example, 40 miles x $0.75 = $30). For those wishing for a more precise calculation, the statutory and regulatory authority for calculating the mileage fee is analyzed in detail below.

#### How to Determine Rate Per Mile

FRCP 45(b)(1) is silent on how to calculate the rate per mile that a traveling witness is entitled to receive. It merely states that the witness must receive the mileage fee "allowed by law."

The starting point for determining the rate per mile allowed by law is 28 U.S.C. § 1821(c)(2). However, Section 1821(c)(2) does not actually set the rate per mile that a traveling witness is entitled to receive. Instead, it states that the travel allowance must be equal to the allowance which the General Services Administration (GSA) has prescribed, pursuant to 5 U.S.C. § 5704, for federal employees traveling on official business by privately owned vehicle.

Section 5704, in turn, states that the rate per mile for reimbursing federal employees traveling by privately owned vehicle is to be established by regulations prescribed by the GSA pursuant to 5 U.S.C. § 5707.

Section 5707(b)(2)(A) requires the GSA to issue regulations prescribing:

- A mileage reimbursement rate which reflects the current costs of operating privately owned automobiles. This rate must not exceed the IRS's single standard mileage rate for optional use by taxpayers in computing the deductible costs of operating their automobiles.
- Mileage reimbursement rates which reflect the current costs of operating privately owned airplanes and motorcycles.

The GSA's regulation setting out the mileage reimbursement rate for operating a privately owned automobile, motorcycle or airplane is 41 C.F.R. § 301-10.303. Section 301-10.303 merely states that the reimbursement rates are published on the GSA's website.

The GSA's website lists the 2012 reimbursement mileage rates as follows:

- Privately owned automobile: $0.555.
- Privately owned motorcycle: $0.525.
- Privately owned airplane: $1.31.

(See *Privately Owned Vehicle (POV) Mileage Reimbursement Rates*.)

In addition, the IRS's 2012 single standard mileage rate for optional use by taxpayers in computing the deductible costs of operating their automobiles is:

- $0.555 per mile for business miles driven.
- $0.23 per mile driven for medical or moving purposes.
- $0.14 per mile driven in service of charitable organizations.

(See *IRS Announces 2012 Standard Mileage Rates, Most Rates Are the Same as in July*.)

#### How to Determine Distance Traveled

As with determining the rate per mile, FRCP 45(b)(1) is silent on how to measure the distance traveled for purposes of computing the mileage fee. The starting point for determining how to measure the distance to and from the place of attendance is 28 U.S.C. § 1821.

Section 1821(c)(2) states only that mileage shall be computed on the basis of a "uniformed table of distances" adopted by the GSA. The GSA's uniformed table of distances is a proprietary database developed by ALK Technologies, and available to users for a subscription fee. However, a regulation promulgated by the GSA to help federal employees calculate distance measurements when seeking reimbursement for travel by privately owned automobiles (and motorcycles) states that distance calculations may be based on "paper or electronic standard highway mileage guides, or the actual miles driven as determined from odometer readings"

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.    6

PRACTICAL LAW COMPANY®

(*41 C.F.R. § 301-10.302*). Therefore, if the issuing party does not wish to subscribe to the ALK uniformed table of distances, a reasonable alternative may be to use an online mapping service such as MapQuest or Google Maps.

Both Section 1821's reference to a "uniformed table of distances" and the GSA's regulation regarding distance measurements appear to support the position that the distance to and from the place of attendance should be calculated by the surface route reasonably taken. However, there is authority suggesting that the mileage fee may be calculated using the straight-line approach (see *Hill, 115 F.R.D. at 186* (calculate mileage by measuring a straight line on a map)).

When measuring the distance to and from the place of attendance, the starting point will typically be either the witness' home or place of business. If there are more than one possible starting points, such as where the witness lives and works in the district where the subpoena is returnable, it may be prudent to measure the distance from the furthest point from the place of attendance.

### Calculating the Mileage Fee

Although FRCP 45(b)(1) does not provide guidance on how to compute the mileage fee, the answer may lie in a GSA regulation designed to help federal employees compute mileage reimbursements for travel by privately owned automobiles and motorcycles (*41 C.F.R. § 301-10.301*). Under this regulation, the mileage fee is calculated by multiplying the distance traveled (as determined by 41 C.F.R. § 301-10.302) by the applicable mileage rate (as determined by 41 C.F.R. § 301-10.303). Case law is also consistent with this approach (see, for example, *Green Const. Co. v. Kan. Power & Light Co., 153 F.R.D. 670, 681 (D. Kan. 1994)*).

### Form of Payment

The attendance and mileage fees may be paid in cash, by check, money order or any other generally accepted method of payment. Where the issuing party tenders payment in some form other than cash (for example, by check) the issuing party should ensure that the recipient can access the funds before the subpoena's return date.

### Time of Payment

The attendance and mileage fees must be tendered at the time the subpoena is served (see *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), 713 F.2d 494, 496 (9th Cir. 1983)*). Failure to tender the requisite fees at the time of service may invalidate the subpoena (see *In re Dennis, 330 F.3d at 704-05*).

### Reimbursement for Reasonable Costs

The party issuing the subpoena may also have to reimburse the witness for costs incurred during travel to and from the designated place of attendance, such as airfare, tolls and lodging (*28 U.S.C. § 1821(c)- (d)*). The issuing party typically pays for these costs after the witness has attended the deposition, hearing or trial, unless otherwise ordered by the court.

### No Fees for Document Subpoenas

No attendance or mileage fee is required for subpoenas commanding the production and/or the inspection of documents (see *Benek v. Kan. City Life Ins. Co., No. 07-cv-5142, 2008 WL 356661, at *1 (W.D. Wash. Feb. 6, 2008)*). This is because the recipient is not required to attend the production, unless the subpoena also commands the recipient to appear for a deposition, hearing or trial (*FRCP 45(c)(2)(A)*).

### No Fees for Subpoena Issued By US

The US government is not required to tender witness fees when the subpoena issues on behalf of the US government or any of its officers or agencies (*FRCP 45(b)(1)*).

## NOTICE OF SUBPOENA

Under the FRCP, an attorney who seeks to obtain evidence from a non-party must notify the other parties of the subpoena's issuance. This section covers the key points for counsel to consider when providing the requisite notice to the other parties.

### Timing of the Notice

If a subpoena commands the production of documents, ESI, tangible items or the inspection of premises or documents before trial, the issuing party must serve a notice and a copy of the subpoena on each party to the lawsuit before the subpoena is served (*FRCP 45(b)(1)*). In practice, as discussed below, serving a notice and copy of the subpoena to each other party to the lawsuit typically can occur contemporaneously with service of the subpoena itself.

The purpose of this notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or items (*1991 Advisory Committee Notes to FRCP 45(b)*).

Several courts read Rule 45(b)(1) literally and require the issuing attorney to serve notice of the subpoena before serving the subpoena itself (see *Morris v. Sequa Corp., 275 F.R.D. 562, 566-67 (N.D. Ala. 2011); Coleman-Hill v. Gov. Mifflin School Dist., 271 F.R.D. 549, 550-51, 553 (E.D. Pa. 2010)*). Other courts take a more relaxed view and permit the notice to be served simultaneously with the subpoena (see *In re Asbestos Prods. Liab. Litig (No. VI), 256 F.R.D. 151, 158 (E.D. Pa. 2009); Florida Media, Inc. v. World Publications, LLC, 236 F.R.D. 693, 695 (M.D. Fla. 2006)* (decided before Rule 45(b)(1) was amended to expressly require notice prior to service of the subpoena)).

Similarly, the issuing party must give written notice to the other parties in the lawsuit if the subpoena commands a witness to appear for a deposition. However, this notice does not need to be given before the subpoena is served if the timing of the notice is reasonable (*FRCP 30(b)(1)*; see also *1991 Advisory Committee Notes to FRCP 45(b)*).

   Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.

Although FRCP 45 does not expressly require prior notice of a trial subpoena, courts have required prior notice where the issuing party uses a trial subpoena to obtain discovery (see *Kenney, Becker LLP v. Kenney*, No. 06-cv-2975, 2008 WL 681452, at *3 & n.3 (S.D.N.Y. Mar. 10, 2008)).

### Drafting the Notice

At a minimum, the notice of subpoena should identify the person to whom the subpoena is directed and state the date, time and place of the production, inspection or testimony so that the other parties may review the documents produced or attend the deposition. The issuing party should also attach a copy of the subpoena to the notice so that the other parties know exactly what evidence is being sought from the witness.

### Serving the Notice

The notice of subpoena must be served on all of the other parties to the lawsuit (*FRCP 45(b)(1)*). The issuing party should check the court's Case Management/Electronic Case Filing (CM/ECF) rules to determine whether discovery-related documents such as a notice of subpoena may be electronically served and filed. If the court's rules do not allow for the electronic service and filing of subpoena notices, the issuing party may serve the notice by mail or another acceptable method of service under FRCP 5(b).

### Proving Service

Counsel may need to draft an affidavit of service after the notice of subpoena is served. Even if the court's rules do not require the notice to be filed, counsel should keep the original affidavit of service in his files in case service is later challenged.

### Post-service Notice

Rule 45(b)(1) does not expressly state whether the issuing attorney must give notice to the other parties once the sought-after documents are delivered to their commanded destination. Nor does it state whether the issuing attorney must inform other parties of any post-service changes or modifications to the subpoena that may have been negotiated by the issuing party and the witness(es). Nevertheless, notifying the other parties of these developments is certainly within the spirit of Rule 45(b)(1).

## DUTY TO AVOID UNDUE BURDEN OR EXPENSE

When using a subpoena to obtain evidence, the issuing party must avoid imposing undue burden or expense on a witness subject to the subpoena (*FRCP 45(c)(1)*). The issuing court may enforce this requirement through discretionary sanctions on offending parties/attorneys, which may include lost earnings and reasonable attorneys' fees (*FRCP 45(c)(1)*). Courts have held that a party's attempt to enforce an invalid subpoena is a *per se* violation of this rule and therefore sanctionable in certain circumstances (see *Matthias Jans & Assocs., v. Dropic*, No. 01-mc-0026, 2001 WL 1661473, at *3 (W.D. Mich. Apr. 9, 2001)).

## ENFORCING THE SUBPOENA

Witnesses do not always comply with subpoenas. As a result, the issuing party may need to enlist the court to force compliance. This section outlines the main issues for counsel to consider when seeking the court's assistance in forcing a reluctant witness to provide the sought-after evidence.

### Attorney Admissions

Before filing a motion to enforce a subpoena, whether labeled a motion to compel or a motion for contempt sanctions, the movant's attorney must first confirm that he is admitted to practice in the court where the motion is to be made -- or figure out how to proceed if he is not so admitted.

#### Admission Required

Attorney admissions requirements are typically set out in the district court's local rules. Generally, an attorney may only appear on behalf of a client in a particular court if he is admitted to practice there (see, for example, *S.D.N.Y.* and *E.D.N.Y. L. Civ. R. 1.3(c)*). Signing and arguing a motion constitutes a court appearance.

An attorney's admission status should not present much of a problem if he files a motion to enforce a subpoena in the court where the underlying action is pending (as would be proper where the subpoena also issued out of that court). Presumably, the movant's attorney is already admitted to practice in that court.

However, as explained above, a subpoena must sometimes be issued out of a court that is different from the court where the underlying action is pending -- and only the issuing court has the power to enforce those subpoenas (see *From which Court Must the Subpoena Issue?*). If the motion must be made in this other court, the movant's attorney will probably have to become admitted there before filing the motion (unless, of course, he is already admitted in that district).

#### Types of Admission

If the movant's attorney is not admitted in the district court where the motion is to be made, he may apply for membership in the court's Bar if he otherwise meets the qualifications for membership. Typically, full Bar membership in a federal district court is limited to attorneys who are admitted to the state Bar of the state where the court is located. Out-of-state attorneys, on the other hand, are usually allowed to become admitted on a *pro hac vice* basis. Directions on how to become admitted to a court or on a *pro hac vice* basis may be found on the court's website and/or in its local rules.

#### Local Counsel

Many courts require out-of-state attorneys admitted *pro hac vice* to associate with local counsel for the duration of the action (see, for example, *C.D. Cal. L. Civ. R. 83-2.3.3*). Depending on the court's rules, local counsel may have to sign and file all documents on behalf of the out-of-state attorney (see, for example, *D.N.J. L. Civ. R. 101.1(c)(4)*).

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.　　8

### Plan Ahead

Becoming a member of the court's Bar and/or getting admitted on a *pro hac vice* basis takes time. Securing a local lawyer who is acceptable to the client may take some time as well. Accordingly, once it becomes apparent that a motion to enforce the subpoena must be filed, the movant's lawyer should start the process of becoming admitted to the federal court where the motion will be made (if he is not already admitted) and, if necessary, seeking out local counsel.

### Review the Court's and Judge's Rules

Federal motion practice is governed in large part by the court's local rules, CM/ECF rules and the judge's individual practice rules (if he has any). These rules are normally posted on the court's website and cover issues such as:

- Whether a district or magistrate judge hears discovery-related motions.
- Whether a pre-motion conference is required.
- Time-frames and deadlines related to the filing of opposition and reply briefs.
- The proper method for filing documents (for example, in paper or electronic format).

It is critical for counsel to understand these rules before filing a motion (or any other document for that matter) in federal court.

### Making a Motion to Compel Compliance under FRCP 37

One way to enforce a subpoena against a non-party witness is to move to compel compliance under Rule 37(a) of the FRCP. This section covers the main points to consider when moving under Rule 37.

### When Used

Motions under Rule 37(a) to compel a non-party's compliance are limited to situations where a:

- Witness refuses to answer oral questions at her deposition.
- Witness refuses to answer written questions posed under FRCP 31.
- Corporation fails to designate a representative to testify under either Rule 30(b)(6) or 31(a)(4) of the FRCP.

(*FRCP 37(a)(3)(B)(i)-(ii)*; see also *Westmoreland v. CBS, Inc., 770 F.2d 1168, 1175 (D.C. Cir. 1985); Fremont Energy Corp. v. Seattle Post Intelligencer, 688 F.2d 1285, 1287 (9th Cir. 1982); Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1341 (8th Cir. 1975)*.)

### Pre-motion Meet and Confer

A motion to compel compliance under Rule 37(a) must include a certification that the movant has, in good faith, conferred (or attempted to confer) with the person who failed to provide the discovery in an effort to resolve the situation without court action (*FRCP 37(a)(1)*).

### Where to Make the Motion

A motion under Rule 37 to compel a non-party's compliance with a subpoena must be made in the district court for judicial district where the discovery is or will be taken (*FRCP 37(a)(2)*). As explained above, a non-party witness generally may only be deposed within the judicial district where she lives, works or regularly conducts business in person (see *From which Court Must the Subpoena Issue?*). Depending on the situation, the deposition may sometimes take place -- and any related motion to compel under Rule 37 must be made -- in a district that is different from the district where the underlying action is pending (see *From which Court Must the Subpoena Issue?*).

### Burden of Proof

Generally, the party seeking to compel compliance bears the initial burden of demonstrating which discovery requests are the subject of its motion to compel, the relevance of the sought-after evidence, the circumstances of the witness' non-compliance and/ or why the witness' objections are not justified (see *Peralta v. Martel, No. 09-cv-3228, 2011 WL 5547153, at *1 (E.D. Cal. Nov. 14, 2011); Wilson v. Hill, No. 08-cv-0552, 2010 WL 5014486, at *2 (S.D. Ohio Dec. 3, 2010); Bayview Loan Servicing, LLC v. Boland, 259 F.R.D. 516, 518 (D. Colo. 2009)*). The burden then shifts to the witness to demonstrate why the sought-after evidence is not discoverable, such as where the request is overly broad, seeks privileged information or is unduly burdensome (see *Snedeker v. Snedeker, No. 10-cv-0189, 2011 WL 3555650, at *1-*2 (S.D. Ind. Aug. 11, 2011); Belaire at Boca, LLC v. Ass'ns Ins. Agency, Inc., No. 06-cv-80887, 2007 WL 2177212, at *1 (S.D. Fla. July 26, 2007)*).

### Relief Available

The primary relief available under Rule 37(a) is an order compelling compliance with the subpoena (*FRCP 37(a)(1)*). A party may not seek contempt sanctions against the witness until (and unless) the court orders compliance and the witness fails to comply with the court's order (*FRCP 37(b)(1)*).

### Are Fees and Costs Recoverable?

The party seeking compliance with a subpoena under Rule 37 may recover, from the witness, its reasonable expenses incurred in making the motion, including attorney's fees (*FRCP 37(a)(5)(A)*). Note that if the court denies the motion to compel, the witness may be able to recover, from the movant, its reasonable expenses incurred in opposing the motion, including attorney's fees (*FRCP 37(a)(5)(B)*).

### Moving for Contempt Sanctions and/or to Compel Compliance under FRCP 45

Another way to enforce a subpoena against a non-party witness is to move for contempt sanctions and/or compliance under Rule 45 of the FRCP. This section covers the main points to consider when moving under Rule 45.

## Subpoenas: Using Subpoenas to Obtain Evidence

### When Used

Rule 45 is used as the basis to enforce a subpoena where the non-party witness:

- Fails to appear to testify at a deposition.
- Fails to appear to testify at trial.
- Fails to produce documents in response to a document subpoena.
- Serves written objections in response to a document subpoena.
- Serves a motion to quash in response to either a deposition or document subpoena.

### Pre-motion Meet and Confer

Depending on the court, the moving party may or may not need to meet and confer with the witness (or her attorney if she is represented) before making a motion to compel or for contempt under Rule 45 (compare *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 115 (D. Conn. 2005) (meet and confer not required for Rule 45 motions) with *C.D. Cal. L. Civ. R. 45-1* (meet and confer required for Rule 45 motions)). As a practical matter, however, it is usually advisable to first reach out to the witness (or her counsel, which is required if the witness is known to be represented by counsel) in an attempt to resolve the dispute without engaging in potentially expensive motion practice.

### Where to Make the Motion

A motion under Rule 45 for contempt or for compliance must be filed with the district court that issued the subpoena (*1991 Advisory Committee Notes to FRCP 45(a)(2); FRCP 45(e)*). As explained above, this may or may not be the same court where the underlying action is pending (see *From which Court Must the Subpoena Issue?*).

### Burden of Proof

The moving party generally carries the burden of proof on a motion to compel or a motion for contempt sanctions under Rule 45 (see *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010); *Echostar Comm. Corp.*, 180 F.R.D. at 394). However, the recipient of the subpoena bears the burden of proof where compliance is resisted on the ground that the subpoena seeks ESI that is not reasonably accessible because of undue burden or cost (*FRCP 45(d)(1)(D)*).

### Relief Available: Contempt Sanctions

Generally, a party may immediately move for contempt sanctions under Rule 45(e) of the FRCP where a subpoenaed witness either fails to:

- Appear and testify at a deposition or trial (without also serving a motion to quash and obtaining a stay of the deposition or other testimony).
- Produce documents (without also serving written objections under FRCP 45(c)(2)(B)).

(See *Francois v. Blandford*, No-10-cv-1330, 2012 WL 777273, at *3 (E.D. La, Mar. 7, 2012); *Diamond v. Simon*, No. 89-cv-7061, 1994 WL 10622, at *1 (S.D.N.Y. Jan. 10, 1994).)

However, a court may not impose contempt sanctions on a non-party who fails to appear and testify at a deposition at a place more than 100 miles from where the witness lives, works or regularly transacts business in person (*FRCP 45(e)*).

Civil contempt sanctions generally include fines, and in some extreme cases, imprisonment (see *In re Grand Jury Proceedings*, 280 F.3d 1103, 1107 (7th Cir. 2002) (fine and imprisonment ordered for failure to obey grand jury subpoena) cert denied, *536 U.S. 925 (2002)*; *Int'l Bhd. of Elec. Workers, Local 474 v. Eagle Elec. Co.*, No. 06-cv-2151, 2007 WL 622504, at *1 (W.D. Tenn. Feb. 22, 2007)* (imprisonment); *Painewebber, Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (fine imposed for failure to comply with deposition and document subpoenas); *Forum Ins. Co. v. Keller*, No. 91-cv-4528, 1992 WL 297580, at *3 (S.D.N.Y. Oct. 8, 1992) (fine imposed for failure to comply with document subpoena)). Civil contempt sanctions are designed primarily to coerce the contemnor into complying with the court's demands (see *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-30 (1994); *In re Grand Jury Proceedings*, 280 F.3d at 1107*). A civil contemnor may purge the contempt by complying with the court's mandate (see *Bagwell*, 512 U.S. at 828; *In re Grand Jury Proceedings*, 280 F.3d at 1107-08*).

If a non-party witness is found in contempt, the sanction should be directed to the non-compliant witness, not against the adverse party, unless that party took steps to secure the witness' non-compliance (see *Francois*, No-10-cv-1330, 2012 WL 777273, at *3; see also *GenOn Mid-Atlantic*, No. 11-cv-1299, 2012 WL 1414070, at *8-15 (noting that parties can be sanctioned for non-party's alleged spoliation of evidence, but finding party's conduct in that case not to be sanctionable)).

Keep in mind that the court may be reluctant to order contempt sanctions right away:

- Some courts hold that a non-party witness may not be held in contempt under Rule 45(e) absent violation of a court order compelling compliance (see *Andrade v. Cooper/T. Smith Stevedoring Co., Inc.*, No. 06-cv-0907, 2009 WL 5178301, at *3 n. 2 (M.D. La. Dec. 15, 2009); *Kant v. Seton Hall Univ.*, No. 00-cv-5204, 2009 WL 5033927, at *1-*2 (D.N.J. Dec. 14, 2009); *Bender v. Del Valle*, No. 05-cv-6459, 2007 WL 1686322, at *2 (S.D.N.Y. June 6, 2007); *Cruz v. Meachum*, 159 F.R.D. 366, 368 (D. Conn. 1994)).

- Other courts, while recognizing that contempt sanctions may be requested in the first instance, nevertheless give the witness one last chance to comply with a subpoena before imposing contempt sanctions (see *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, No. 00-cv-7352, 2004 WL 1418201, at *2-*3 (S.D.N.Y. June 23, 2004); *Diamond*, No. 89-cv-7061, 1994 WL 10622, at *1; *Kohler Co. v. Weiss*, No. 90-cv-3188, 1993 WL 307775, at *2 (S.D.N.Y. Aug. 9, 1993)).

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.    10

**Relief Available: Order Compelling Compliance with Subpoena**

Generally, a party should move under Rule 45 to compel compliance with a subpoena where either:

- Prior case law indicates that the court will not order contempt sanctions absent violation of an order compelling compliance.

- The witness timely served written objections in response to a document subpoena (*FRCP 45(c)(2)(B)(i)-(ii); Pennwalt Corp. v. Durand-Wayland, Inc., 708 F.2d 492, 494 & n. 5 (9th Cir. 1983)*).

- The witness timely served a motion to quash and to stay discovery in response to a deposition subpoena. To eliminate any doubt as to whether a court order denying the witness' motion to quash also constitutes an order compelling the sought-after discovery, the party seeking discovery will typically make a cross-motion to compel in response to the witness' motion to quash.

**Are Fees and Costs Recoverable?**

Whether or not a party may recover its motion-related costs and fees from the witness under Rule 45 depends on the relief sought:

- As a general rule, the movant may not recover its motion-related costs and fees under Rule 45 when it moves to compel compliance with the subpoena (see *Peacock v. Merrill, No. 08-mc-0001, 2008 WL 687195, at *4 & n. 11 (M.D. La. Mar. 10, 2008); Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., No. 05-cv-2164, 2007 WL 852521, at *7 (D. Kan. Mar. 16, 2007); Davis v. Speechworks Int'l, Inc., No. 03-cv-0533, 2005 WL 1206894, at *4-*5 (W.D.N.Y. May 20, 2005); SEC v. Kimmes, No. 18-mc-0304, 1996 WL 734892, at *5-*11 (S.D.N.Y. Dec. 24, 1996); Application of Sumar, 123 F.R.D. 467, 473-74 (S.D.N.Y. 1988)*).

- But, courts may award costs and fees to a party who prevails on a motion for contempt sanctions (see *Francois, No-10-cv-1330, 2012 WL 777273, at *3; In re Faiella, No. 05-bk-50986, 07-ad-1470, 2008 WL 1790410, at *5-*8 (Bankr. D.N.J. Apr. 18, 2008); Int'l Bhd. of Elec. Workers, No. 06-cv-2151, 2007 WL 622504, at *1, *5; Tranchant v. Envt'l Monitoring Svc., Inc., No. 00-cv-2196, 2001 WL 1160864, at *1-*2 (E.D. La. Oct. 2, 2001); Bulkmatic Transport Co., Inc. v. Pappas, No. 99-cv-12070, 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001); Kohler, No. 90-cv-3188, 1993 WL 307775, at *2*).

## Procedure for Making the Motion

As explained below, the procedure for making either a motion to compel or a motion for contempt sanctions may differ significantly depending on whether the motion is filed in the court where the underlying action is pending or in the court that issued the subpoena (assuming the two courts are different).

**Motion Made in Court where Underlying Action is Pending**

If a motion to compel compliance or for contempt sanctions is made in the court where the underlying action is pending, the moving party normally may serve and file its motion according to the same filing guidelines applicable to other documents in the case. Generally, this means serving and filing the motion electronically through the court's CM/ECF system. In addition, the moving party may have to serve a paper copy of the motion on the non-party witness (or his attorney) by mail or another acceptable service method under FRCP 5, unless the witness (or his attorney) receives CM/ECF service in the case.

Keep in mind that special service rules may apply for contempt motions (see, for example, *S.D.N.Y. and E.D.N.Y. L. Civ. R. 83.6(a)* (if alleged contemnor is not represented by counsel, service must be made personally, together with a copy of Local Civil Rule 83.6, in the manner prescribed by FRCP 4)). In addition, the court may decide to hold a formal hearing if the movant seeks civil contempt sanctions against the witness under Rule 45(e). An alleged contemnor has the right to notice and an opportunity to be heard before being held in contempt of court (see *Bagwell, 512 U.S. at 827; Fisher, 526 F.2d at 1342-1343*). Even more stringent procedures apply if the court decides to level criminal contempt sanctions against the witness (see *Bagwell, 512 U.S. at 826-27*).

**Motion Not Made in Court where Underlying Action is Pending**

Often, evidence crucial to a lawsuit is held by a non-party witness who has no connection with the judicial district where the underlying action is pending. In these situations, a litigant may have no choice but to issue a subpoena for the witness out of a district court located where the witness lives or works, even though that court is not the court where the underlying lawsuit is pending (see *From which Court Must the Subpoena Issue?*). To enforce such a subpoena, the moving party must first commence a new action in the issuing court and file its motion papers in that new action. These are commonly referred to as miscellaneous (or ancillary) actions (see *Visto Corp. v. Smartner Info. Sys., Nos. 06-80339 MISC, 06-80352 MISC, 2007 WL 218771, at *1 (N.D. Cal. Jan. 29, 2007)*). A miscellaneous action is essentially a mini-lawsuit in which a party seeks discrete relief, such as enforcement of a subpoena.

Miscellaneous actions are typically commenced the same way as civil lawsuits. However, each court has its own internal procedures governing the commencement of these types of actions. Procedural protocol may vary considerably from court to court. If the court's local rules are unclear on how to commence a miscellaneous action, contact the relevant court's clerk in charge of miscellaneous filings for further guidance. Website links for all of the US federal district courts (which include the various clerks' office phone numbers) are provided by the Administrative Office of the US Courts' *court locator*.

Some common issues that arise when the moving party commences a miscellaneous action are:

- **Method of commencement.** Some courts require the moving party to commence miscellaneous actions by filing paper copies of the initiating documents at the courthouse (see, for example, *S.D.N.Y. Elec. Case Filing Rules & Instructions (ECF Rules), § 18.11 (Apr. 2011)*). Other courts require

 Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.

miscellaneous actions to be commenced through the court's CM/ECF system (see, for example, *D. Mass. CM/ECF Admin. Proc,, § F.1 (July 2011)*).

■ **Required documents.** The moving party must file its motion papers to commence the miscellaneous action. If the moving party is a corporation or other organization, it must also file a Rule 7.1 corporate disclosure statement. In addition, some courts may require the moving party to file a notice of appearance and a civil cover sheet.

■ **Filing fees.** Federal district courts charge a $46 filing fee to open a new miscellaneous action (see *United States District Court Fee Chart (http://us.practicallaw.com/6-507-3248)*).

■ **Post-commencement service and filing.** After the action is commenced, the moving party serves the initiating documents (and any post-initiation documents) on the recipient of the subpoena and the other parties to the underlying action, and files proof of service in the issuing court (*FRCP 5(a)(1)(D); FRCP 5(d)(1) and FRCP 37(a)(1)*). Typically, paper copies of the initiating documents must be served on the parties (see, for example, *S.D.N.Y. ECF Rules, § 18.11 (Apr. 2011)*). Depending on the court, post-initiation documents (such as opposition and reply briefs) may be served and filed in paper format or electronically (see, for example, *S.D.N.Y. ECF Rules, § 18.11 (Apr. 2011)* (post-initiation documents in miscellaneous cases must be served and filed electronically)).

■ **Attorney admissions.** Before commencing a miscellaneous action, counsel for the moving party should check the relevant court's local rules to determine whether he must be admitted to practice in that court and whether he must retain local counsel. If counsel for the moving party is allowed to file papers himself, and the court allows e-filing in miscellaneous cases, he should also obtain a CM/ECF login and password from the issuing court.

## Required Documents

As with any other motion, a motion to compel compliance with a subpoena (or a motion for contempt sanctions) generally requires the moving party to serve and file:

■ A notice of motion.
■ A memorandum of law.
■ Supporting declarations and affidavits as necessary.
■ Proof of service.
■ If appropriate, a proposed order.

Before filing the motion, counsel should always check the court's local rules and standing orders and the judge's individual practice rules to ensure that all of the required documents are filed and all local procedures are followed.

When preparing a motion to compel or a motion for contempt, counsel should consider the following:

■ The court may (or may not) require a certification stating that the parties have met and conferred in an attempt to resolve

their differences without resorting to motion practice (see *Pre-motion Meet and Confer*).

■ When moving for contempt, the issuing party may need to submit additional documents, such as an affidavit detailing the alleged misconduct, the alleged damages caused by the misconduct and evidence regarding the sum of costs incurred by the moving party (see, for example, *S.D.N.Y. and E.D.N.Y. L. Civ. R. 83.6(a)*).

■ The moving party may have to file additional documents if the motion is made by way of a miscellaneous proceeding (see *Motion Not Made in Court Where Underlying Action is Pending*).

## Substance of the Motion

As with most discovery motions, a motion to enforce a subpoena is inherently fact-specific. Where appropriate, counsel should be prepared to address the following issues in its motion:

■ The legal basis for the motion (for example, whether the party is moving under Rule 37 or Rule 45 of the FRCP).
■ The relief sought (for example, compliance with the subpoena, contempt sanctions and any related costs and fees).
■ The factual background and subject matter jurisdiction of the underlying action (if the motion is not made in the court where the underlying action is pending).
■ The circumstances surrounding the issuance and service of the subpoena.
■ The circumstances surrounding the witness' non-compliance.
■ The relevance of the evidence sought by the subpoena, including a description of why it is necessary to obtain the evidence from this particular witness as opposed to some other source.
■ A description of the reasonableness and clarity of the demands made in the subpoena.
■ Any potential burden imposed on the witness, such as the time frame covered by the subpoena's requests.
■ To the extent required, the moving party's attempt to meet and confer with the witness or his attorney to resolve the dispute without judicial intervention.

## INDEPENDENT ACTION TO OBTAIN DISCOVERY

If the issuing party cannot successfully subpoena a non-party witness under FRCP 45, that party may be left with no other choice but to commence an independent action to obtain discovery (see *Lubrin v. Hess Oil V.I. Corp., 109 F.R.D. 403, 405 (D.V.I. 1986); Darbeau v. Lib. of Cong., 453 F. Supp. 2d 168, 170-71 (D.D.C. 2006)* (independent action seeking discovery permissible where statutory bases for obtaining discovery are inadequate); see also *1991 Advisory Committee Note to FRCP 34(c)* (noting that independent actions to obtain discovery from non-parties are not precluded under the FRCP, but they may be unnecessary in light of Rule 45)). These are sometimes referred to as actions for an equitable bill of discovery. A situation where a non-party witness cannot be successfully subpoenaed under

Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved.   12

PRACTICAL LAW COMPANY®

FRCP 45 might arguably arise if that witness purposely stays in a federal district that is more than 100 miles away from where he lives, works and regularly transacts business in person to avoid being deposed in a particular lawsuit (*FRCP 45(c)(3)(A)(ii)*).

## APPEALS

Generally, federal appeals courts may hear appeals only following final judgments from lower courts. Discovery orders, such as orders quashing (or compelling compliance with) subpoenas, are typically deemed interlocutory and are therefore reviewable only in connection with an appeal from a final judgment (see *In re Subpoena Served on the Cal. Pub. Utils. Comm'n, 813 F.2d 1473, 1476 (9th Cir. 1987)*). However, these orders may sometimes be immediately appealable. As explained below, whether an immediate appeal lies from an order quashing (or compelling compliance with) a subpoena generally depends on the relief ordered by the court and the particular court that issues the order. As a general matter, appeals of orders made during discovery are reviewed under an abuse of discretion standard (see *Wantanabe Realty Corp. v. City of New York, 159 Fed. App'x 235, 240 (2d Cir. 2005)*).

### Order Denying Discovery Entered in Underlying Action

An order denying discovery commanded by a subpoena served on a non-party is not immediately appealable if that order is entered by the court where the underlying action is pending (see *Caswell v. Manhattan Fire & Marine Ins. Co., 399 F.2d 417, 422 (5th Cir. 1968)*).

### Order Denying Discovery Entered in Ancillary Action

An order denying discovery commanded by a subpoena served on a non-party in an ancillary proceeding is immediately appealable if the ancillary proceeding is pending in a district court located in a different circuit from where the underlying lawsuit is pending (see *Nicholas v. Wyndham Int'l, Inc., 373 F.3d 537, 541-42 (4th Cir. 2004); Cusumano v. Microsoft Corp., 162 F.3d 708, 712 (1st Cir. 1998)*).

In contrast, circuit courts are split over whether an immediate appeal may lie from an order denying discovery from a non-party where the ancillary proceeding and the underlying lawsuit are in separate district courts within the same circuit:

- Several circuits hold that an appeal in this situation must wait until entry of a final judgment in the underlying action (see *Periodical Publishers Service Bureau, Inc. v. Keys. 981 F.2d 215, 217-18 (5th Cir. 1993); Hooker v. Cont'l Life. Ins. Co., 965 F.2d 903, 905 (10th Cir. 1992); Barrick Group, Inc. v. Mosse, 849 F.2d 70, 73 (2d Cir. 1988); In re Subpoena Served on the Cal. Pub. Utils. Comm'n, 813 F.2d at 1476-80*).
- Other circuits take a more liberal approach and allow the aggrieved party to immediately appeal (see *Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1021-22 (Fed. Cir. 1986); Ariel v. Jones, 693 F.2d 1058, 1059 (11th Cir. 1982)*).

If the aggrieved party is forced to file two separate appeals after entry of final judgment in the underlying action (that is, an appeal from the ancillary proceeding and an appeal from a final judgment

in the underlying action), he must file two separate notices of appeal in the district courts (and pay the required filing fees for both) and then move in the appellate court to consolidate the two appeals under Rule 3(b) of the Federal Rules of Appellate Procedure (see *Hooker, 965 F.2d at 905*).

### Order Compelling Compliance with Subpoena

Non-parties may not take an immediate appeal from court-ordered discovery based on a subpoena regardless of whether the order is made in the underlying action or in an ancillary proceeding. To obtain immediate appellate review, the subpoenaed party must defy the court order, be found in contempt and appeal the contempt citation (see *In re Flat Glass Antitrust Litig., 288 F.3d 83, 89-90 (3d Cir. 2002)* (underlying action); *MDK, Inc. v. Mike's Train House, Inc., 27 F.3d 116, 119-122 (4th Cir. 1994)* (ancillary proceeding); *Hooker, 965 F.2d at 904 & n.1* (ancillary proceeding); *In re Subpoena Served on the Cal. Pub. Utils. Comm'n, 813 F.2d at 1476* (non-party must appeal contempt citation); but see *Caswell, 399 F.2d at 422*).

---

**Practical Law Company** provides practical legal know-how for law firms, law departments and law schools. Our online resources help lawyers practice efficiently, get up to speed quickly and spend more time on the work that matters most. This resource is just one example of the many resources Practical Law Company offers. Discover for yourself what the world's leading law firms and law departments use to enhance their practices.

To request a complimentary trial of Practical Law Company's online services, visit **practicallaw.com** or call **646.562.3405**.

**PRACTICAL LAW COMPANY®** 

 Copyright © 2012 Practical Law Publishing Limited and Practical Law Company, Inc. All Rights Reserved. Use of PLC websites and services is subject to the Terms of Use (http://us.practicallaw.com/2-383-6690) and Privacy Policy (http://us.practicallaw.com/8-383-6692).

## Affidavit of Plaintiff Doctor JD Isaacs

My first week at DHMC I was observed to be on the verge of a nervous breakdown by Dr Nick Bus, Dr Justin Krawitt, and several patients.

I believe my condition resulted from a bizarre form of passively hostile abuse from my supervisors, who knew about my prior litigation with Arizona/USC. Interestingly, when I worked at University of Arizona surgery, I was told I was "too calm." They asked me to resign because, they said, I was so calm it appeared I didn't care about my job. Strangely, at my next job at DHMC, I was on the verge of a nervous breakdown within hours of starting.

Two weeks ago, I conducted a deposition of Dr Simon Khagi, my supervisor that first week at DHMC. To me the deposition confirmed Dr Khagi's condescending and at times aggressive attitude towards me, and his part in a conspiracy to cover up fraud. His memory simply failed too many times to be believable. He "didn't remember" if he, or anyone else, knew about Arizona. It appeared to me he didn't want to perjure himself.

Dr Khagi also did not recall any details of the two prostate exams he ordered me to conduct my first three days at DHMC. When I showed him statistics on the number of prostate exams the average intern conducts, I believe he became defensive. He started to rationalize that even if the prostate exams were unnecessary, I "learned" from them. Hence even by his suggestion, at a minimum these exams were never properly consented as educational practice.

Let me explain why I am concerned about the two prostate exams, and why I believe experts (other than myself) should assess these patient records to determine whether or not a patient was subjected to passive abuse.

First, anecdotally, I believe the other 7 psychiatry interns didn't conduct any (or possibly one) prostate exams during their entire month on M2. I was ordered to conduct 2 in three days on M2, under very questionable circumstances.

Dr Khagi asked me to conduct a Prostate Exam on Patient A, a patient with terminal metastatic cancer. He said the reason was to "source" if the cancer stemmed from the prostate. I immediately thought this was odd, but did as instructed, only later wondering about why Dr Khagi ordered this exam. When I walked into the patient's room and told him I was his resident physician and would be conducting a prostate exam, the patient audibly gasped. I felt bad for him. I tried to explain to the patient it would help identify the correct treatment course. The patient could probably tell I was well-intended albeit unsure, and the exam proceeded without incident.

The next day, Patient B had low blood pressure, and Dr Khagi instructed me to perform a rectal exam for blood loss. I did the exam immediately, and didn't think much about it. Later that day, Dr Khagi asked me "Did you do the rectal on Patient B?

Make sure you did, because this one is actually important. " He smirked as he said *important*, which made me think about the exam the day before.

It was only six months later, when Dr Finn blackmailed me, that I realized I worked under six monhts of false pretenses, starting with Dr Khagi's orders on day one.

I have noticed the FBI and the NH Board of Medicine about the fraud and abuse. It is now my belief that this entire matter is subject to cover up, as my allegations would be particularly damaging to one of New Hampshire's largest, most reputable employers – if not the head of the World Bank – who ultimately, I believe, assented to a cover up. I sent a "whistleblower" email to Jim Yong Kim, and two days later, it appears Dartmouth's emails were scoured. Dr Kim's attorney professed about "what happened" to me, and I believe Dr Kim knows as well. Additionally, his first week assigned to this case, Attorney Kaplan told me "it took them six months to find out everything about you" which I believe was a 'slip' in which Kaplan effectively admitted to his client's fraud.

I will exhaust all appeals at all appropriate venues to uncover the truth of these matters.

The foregoing is true to the best of my knowledge, belief, and recollection.

*Jeffrey D. Isaacs*

Jeffrey D Isaacs
November 12 2013

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


J. D. Isaacs

    v.                                    Civil No. 12-cv-40-JL

Dartmouth Hitchcock Medical
Center, et al.[1]


### O R D E R

    Pending before the court are numerous motions concerning

discovery and other related matters (doc. nos. 71, 72, 75-77,

79, 86, 89, 93, 98, and 100-102).  The district judge has

referred all pending motions in this case to this magistrate

judge for ruling.  I held a hearing on October 31, 2013,

concerning all pending motions in this matter.  I issued oral

rulings from the bench on all but one of the motions,

plaintiff's motion for a subpoena for PACER records (doc. no.

89).  What follows is a summary of my oral rulings and

resolution of the motion for a subpoena for PACER records.

--------

[1]The defendants in this matter are the Dartmouth Hitchcock
Medical Center and Mary Hitchcock Memorial Hospital
(collectively the "Hitchcock defendants"), and the Trustees of
Dartmouth College and Dr. Christine Finn (collectively the
"College defendants").

1.  Joint Motion for Hearing for Emergency Scheduling
    Conference (Doc. No. 72) and Plaintiff's Motion to Strike
    Motion for Hearing (Doc. No. 75)

    The defendants' motion (doc. no. 72) is DENIED as moot, as

a hearing was held On October 31, 2013.  The plaintiff's motion

to strike (doc. no. 75) is also DENIED.


2.  College Defendants' Motion for Protective Order (Doc. No.
    76) to prevent deposition of Dr. Jim Yong Kim

    The motion (doc. no. 76) is GRANTED.  Once all of the other

depositions are complete in this matter, plaintiff may renew his

request for Dr. Kim's deposition, if he can demonstrate that Dr.

Kim possesses discoverable information not obtained or

obtainable from any other source.


3.  Hitchcock Defendants' Motion for Protective Order (Doc. No.
    79) and College Defendants' Motion to Quash Subpoena (Doc.
    No. 98) to change the location of depositions of Drs.
    Riblet, Friedman, and Green

    The motions (doc. nos. 79 and 98) are GRANTED.  Depositions

will be held at a neutral location in Lebanon with an off-duty

law enforcement officer present.  As agreed to by defendants,

the costs associated with obtaining a neutral location and

hiring the officer will be borne by defendants.

4.  Plaintiff's Motion for a Protective Order (Doc. No. 86)
    concerning the deposition of the plaintiff

The motion (doc. no. 86) is DENIED as unnecessary because

defendants have agreed that the deposition of the plaintiff can

be held on one day and will last less than six hours.  The

deposition will be conducted in two three-hour sessions, to take

place on the same day, with at least one hour in between the

sessions.

5.  Defendants' Motion for Protective Order (Doc. No. 102)
    Concerning Depositions of New Jersey and California
    Witnesses (Drs. Guez and Simon)

The motion (doc. no. 102) is DENIED as unnecessary because

plaintiff has agreed that the depositions of witnesses Guez and

Simon will be conducted in the city or town where the witnesses

live or work, or as otherwise agreed by the parties.

6.  Plaintiff's Motion for Subpoena (Doc. No. 89) for PACER
    Service

The motion (doc. no. 89) is DENIED without prejudice to

plaintiff renewing his motion if he is unable to obtain the

information he seeks in discovery.

7.  Plaintiff's Motion for Sanctions and Injunctive Order (Doc.
    No. 71) and Addendum (Doc. No. 77)

The plaintiff's motion (doc. no. 71) is GRANTED in part and

DENIED in part, as specified herein:

A.   Sanctions

All of plaintiff's requests for sanctions are DENIED.  The
defendants have not violated any court order to compel
discovery.  Sanctions are inappropriate at this time.

B.   Admissions

Plaintiff's request to have any fact deemed admitted by any
defendant is DENIED, as it is mooted by the scheduling order
issued today.

C.   Email

i.   Keyword Searches

Plaintiff's request for "Keyword Searches" of the email
systems of the Hitchcock and College defendants for the term
"Isaacs" is GRANTED in part and DENIED in part.  As discussed at
the hearing, the defendants will provide to plaintiff the
results of Keyword Searches for certain individuals' email
accounts for the period beginning January 1, 2011, and ending
March 19, 2012.

The College defendants have agreed to produce to plaintiff,
on or before November 14, 2013, search results for the keyword
"Isaacs" for the email accounts of: Attorney O'Leary, Dr. Jim
Yong Kim, and Dr. Alan Green.  The Hitchcock defendants have

agreed to produce to plaintiff, on or before November 14, 2013, search results for the keyword "Isaacs" for the email accounts of: Dr. Christine Finn, Dr. Marc Bertrand, and Dr. Harley Friedman.  To the extent that defendants assert a privilege as a reason not to disclose any results of these searches, a privilege log will also be provided to plaintiff by November 14, 2013.

### ii.  Forensics Expert

Plaintiff's request for a forensics expert to attempt to recover plaintiff's Outlook email account is DENIED at this time, without prejudice to renewal should the information he seeks not be produced during the Keyword Searches to be conducted by defendants pursuant to this order.

The court notes that plaintiff made clear during the hearing that he was less concerned with the production of his Outlook account than he is with the Keyword Search (for "Isaacs") of certain employees of defendants.  As plaintiff candidly admitted, plaintiff is generally aware of what was in his Outlook account, as he previously saw the ingoing and outgoing emails of that account.  Plaintiff stated that he cannot recall any "smoking gun" email evidence in his Outlook account.

D.    Patient Records

Plaintiff, in the addendum to his motion for sanctions and an injunction order (doc. no. 77), asks the court to compel defendants to produce medical records of certain patients he treated during his internal medicine rotation. The request is DENIED as plaintiff has not demonstrated the materiality of those records to any issue in this matter.

8.    Plaintiff's Motion to Quash Subpoenas (Doc. No. 93) for USC and American University of the Caribbean records

The motion to quash (doc. no. 93) is DENIED. The relevance of educational records has been demonstrated by defendants. Plaintiff's argument that the confidential settlement concerning the USC records precludes discovery is not accurate. The settlement agreement exempts from its purview any court-ordered disclosure.

9.    Defendants' Motion to Compel (Doc. No. 100) Answers to Interrogatories 11, 17, 18 and 21

The motion (doc. no. 100) is GRANTED. The defendants have demonstrated the relevance of the requested information. Plaintiff is directed to respond to interrogatories numbered 11, 17, 18 and 21 on or before November 14, 2013.

10.   Defendants' Motion for a Protective Order (Doc. No. 101)

Because the parties have extreme difficulty agreeing on simple matters of discovery, and because so much of the discovery in this case concerns confidential matters (such as medical records; audit trails; quality assurance information; personnel records, including evaluations and testing; educational records; and employment records), the court believes a broad confidentiality order is appropriate.  The motion for a protective order (doc. no. 101) is therefore GRANTED.  The court has issued this date, a protective order in this matter substantially similar to the proposed order (doc. no. 101-1) submitted by the Hitchcock defendants.  The court notes that the protective order applies to all of the parties in this case.

11.   Scheduling

A.   Each party will have until December 2, 2013, to submit a request to any other party to produce any interrogatory response, document, or other item in discovery, or to notice any depositions yet to be taken.

B.   The parties will then have until January 2, 2014, to either produce the discovery requested, produce privilege logs, or submit to the requesting party any objection, in writing, to providing the requested item.

C.   Any motions to compel, or other motions to resolve any outstanding discovery dispute, must be filed by January 16, 2014.  These motions must be in compliance with the Federal Rules of Civil Procedure and this court's Local Rules.

The court reminds plaintiff that pro se parties must follow the rules of court and the Federal Rules of Civil Procedure.  As just one example, with any motion to compel, our local rules require the movant to attach an exact copy of the request and the response.  Failure to abide by the rules of court may result in sanctions, such as the court denying a motion that fails to so comply.

D.   Discovery will close on February 3, 2014.

E.   The deposition of the plaintiff will take place on or before December 19, 2013.

F.   All experts will be disclosed in compliance with Fed. R. Civ. P. 26(a)(2)(B).  The plaintiff must disclose expert witnesses by December 13, 2013.  Defendants must disclose expert witnesses by January 10, 2013.  Plaintiff's supplementations under Fed. R. Civ. P. 26(e) are due December 27, 2013, and defendants' supplementations are due January 24, 2014. Challenges to expert testimony must be made by February 28, 2014.

G.   Motions for summary judgment are due February 17, 2014.

H.   A final pretrial conference will be held June 27, 2014, at 2:00 p.m.

I.   Trial is continued to the two-week trial period beginning July 8, 2014.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

November 4, 2013

cc:  Christopher James Pyles, Esq.
     Edward M. Kaplan, Esq.
     Kathleen C. Peahl, Esq.
     Pierre A. Chabot, Esq.
     Jeffrey D. Isaacs, M.D., pro se