UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

———————

No. 14-1085

Dr. J.D. Isaacs

Plaintiff-Appellant

v.

Dartmouth-Hitchcock Medical Center,

Mary Hitchcock Memorial Hospital,

Dr. Christine T. Finn, and the

Trustees of Dartmouth College

Defendants-Appellees

———————

# PETITION FOR REHEARING EN BANC & RECONSIDERATION

The Plaintiff-Appellant hereby motions the First Circuit Court of Appeals to reconvene and to reconsider its order dated March 31, 2014. The Court entered a judgment terminating and dismissing Plaintiff-Appellant's appeal, before it was even filed, for purported lack of jurisdiction. The First Circuit has undisputed jurisdiction to hear an

appeal concerning a District Court denial of an injunction. Moreover, the Plaintiff-Appellant has the right to file his appeal, which he was not even granted.

The matter under appeal asks the Court to address the importance of e-discovery evidence preservation, as ESI becomes more prevalent and can often "make or break" a case. Despite the increasing frequency of e-discovery disputes such as this, there exists minimal authority from the Federal Circuit Courts or the United States Supreme Court. Plaintiff-Appellant asserts that the particular circumstances that lead to this appeal are about as 'pure' of an example for the necessity of e-discovery noncompliance sanctions as could possibly exist. Should this Court deny Plaintiff-Appellant's appeal, or specifically his right to file the appeal, Plaintiff-Appellant shall petition for a Writ of Certiorari.

On January 16th 2012, Plaintiff-Appellant sought help from Dartmouth President Jim Yong Kim concerning six months of mental abuse he suffered from physician administrators of the Dartmouth Department of Psychiatry. Three days prior, Dartmouth's own Psychiatry Department diagnosed Plaintiff-Appellant with mental shock. Plaintiff-Appellant, knowledgeable in legal processes from his studies at Vanderbilt Law School, notified Kim in writing of pending litigation and Dartmouth's duty "to preserve electronic records under FRCP 34." Several days later, Plaintiff's notice to Kim had been relayed to the Department of Psychiatry Professor Christine Finn, who immediately ordered the deletion of Plaintiff's entire Dartmouth email account. Likewise, that same week Plaintiff's medical records at Dartmouth disappeared. To this day, no explanation has been proffered by the Defendants, nor has it been demanded by the District Court.

The deletion of Plaintiff-Appellant's email account marked the beginning of a concerted effort to obstruct justice and retaliate against the Plaintiff. Phone calls to Kim's office were answered by General Counsel Kevin O'Leary, who openly mocked Plaintiff-Appellant "You can't sue us, you sue everybody." Dartmouth's outside counsel Edward Kaplan (Past President, Federation of Defense and Corporate Counsel) would shout profanities at the Plaintiff on the telephone and intimidate him "This case will end like all the others. We researched you for six months and you're being fired for what happened in California." The situation escalated in intensity, and by early March 2012, Plaintiff sent notice to Jim Yong Kim that he was negligent in failing to control or investigate the situation. With knowledge of Jim Yong Kim's looming nomination to the World Bank, Plaintiff-Appellant was improperly terminated from Dartmouth employment to discredit his claims against Dartmouth and Kim (which were already in federal court). Dartmouth's own due process was not followed; Plaintiff was fired without any formal "administrative leave" or "fair hearing" required under Dartmouth bylaws. The termination happened one week prior to Kim's nomination. The day before the nomination, Plaintiff-Appellant added Kim as Defendant. When a process server arrived at Kim's residence, one Vivian Barbadoro was instructed to declare that Kim was not home. In fact, the process server testified that he believes Kim was home, because there was a procession of cars relating to the nomination. It is unclear whether Vivien Barbadoro, Kim's assistant, has any relation to US District Judge Barbadoro (a Dartmouth professor), but Plaintiff-Appellant's position is that Dartmouth has attempted to improperly influence the District Court to "hush" Plaintiff and dismiss his claims. Plaintiff-Appellant pleas to the Court to review the District Court record and ensure that

due process is afforded to him.

Procedurally, this Court ordered the District Court transcript due on April 28th. The appeal was surprisingly dismissed before the transcript was ever entered into the record. Plaintiff was therefore unable to file an objection to the Motion to Dismiss, pending release of the transcript. In their Motion to Dismiss, opposing counsel took Plaintiff-Appellant's statement of a "smoking gun" out of context. Plaintiff's position is that his deleted email account would be critical for a jury, or an expert witness, to understand how he was abused and unfairly scrutinized by Dartmouth Psychiatry. In the hearing, Plaintiff stated about his own deleted emails, which he largely remembers: "Looking back it might add circumstantial evidence to my claims." More significantly, deletion of the email account demonstrates Dartmouth's efforts to scour all electronic evidence. Hence Plaintiff-Appellant's statement at the hearing "my bigger concern is that there was a retaliatory deletion of other emails." In short, it is undisputed that Plaintiff's own emails and medical records were destroyed, and the rational conclusion is that other, more incriminating evidence was also destroyed. Unfortunately, the District Judge did not order forensic recovery of all ESI, as Plaintiff-Appellant had requested.

In their Motion to Dismiss, Opposing Counsel Chabot has suggested that Plaintiff's characterization of the sanctions appeal as an injunction is somehow disingenuous. Plaintiff wants his job back and his name cleared, which require an injunction. This is what he primarily sought in the sanctions motion (in addition to an adverse jury inference, which is obviously not Plaintiff's main goal compared to the injunction). More disingenuous is Opposing Counsel's entire role in what Plaintiff-Appellant asserts is quite possibly the largest cover-up in Dartmouth's history.

The District Court's arbitrary and capricious denial of Plaintiff-Appellant's motion for sanctions and injunction did not offer any opinion or explanation. None of the twenty applicable cases cited in Plaintiff-Appellant's Memorandum of Law were considered; merely an empty order denying the sanctions and injunction.

The Plaintiff-Appellant's argument for an injunction is rather straightforward. Dartmouth scoured all electronic evidence in the days following the notice of litigation sent to Jim Yong Kim. Plaintiff's case was severely damaged by the ESI destruction. As cited in the original motion for sanctions, "the court has broad discretion to fashion an appropriate sanction to remedy the wrong done to plaintiffs, but the sanction must be proportionate with the circumstances involved." *Barnhill v. U.S.*, 11 F.3rd 1360, 1367 (7th Cir. 1993). In this case, Plaintiff-Appellant did not go so far as to ask the district court to enter default judgment in his favor, but rather, argued that an injunction allowing him to return to work was appropriate. An injunction permitting Plaintiff-Appellant to return to his federally funded physician residency program shall be the subject of the appeal, and this Court has xjurisdiction to consider the appeal.

This appeal likely represents the Plaintiff-Appellant's final chance to be employed and contribute meaningfully to society. After graduating from Dartmouth College in 1999, the Plaintiff-Appellant spent a decade studying law, medicine, and international administration, achieving top rankings nationwide in many facets of his studies. The unethical behavior of the Dartmouth Department of Psychiatry, and Dartmouth administration, has left Plaintiff unable to apply his education to solve society's problems. The Defendant-Appellees disposed of critical ESI evidence the same way they disposed of Plaintiff-Appellant's livelihood and well-being. A sanction in the form of an

injunction permitting Plaintiff-Appellant's return to work is the simplest and fairest solution, and one which this Honorable Court is duty bound to consider.

/s/ Jeffrey D. Isaacs

Plaintiff-Appellant, Jeffrey David Isaacs

## Certificate Of Service

All counsel of record have been served a copy of this Petition via ECF.

/s/ Jeffrey D. Isaacs

Plaintiff-Appellant, Jeffrey David Isaacs